UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

—————————————————————————————— X

SHANE HYATT,
    Plaintiff Pro Se,

     —Versus—

CARL J. KOENIGSMANN, Deputy Commissioner &
Chief Medical Officer of the New York State
Department of Corrections and Community Services;
DAIVD A. ROCK, Former Superintendent of Upstate
Correctional Facility; THOMAS L. LAVALLEY, Former
Superintendent of Clinton Correctional Facility;
JAMES E. PROULX, Deputy Superintendent of Programs
at Clinton Correctional Facility; Dr. VONDA JOHNSON,
Facility Health Services Director at Clinton
Correctional Facility; KANG LEE, Former Doctor at
Clinton Correctional Facility; JAMES SPINNER JR,
Lieutenant at Upstate Correctional Facility; JERRY
J. HEBERT JR, Corrections Sergeant at Upstate Correctional
Facility; MICHAEL J. EDDY, Corrections Sergeant at Upstate
Correctional Facility; DAVID BICKFORD, Former Corrections
Sergeant at Upstate Correctional Facility; TIMONTHY
RAMSDELL, Corrections Officer at Upstate Correctional
Facility; TIMONTHY ARQUITT, Corrections Officer at Upstate
Correctional Facility; BETSY MITCHELL-ODDEY, Corrections
Officer at Upstate Correctional Facility; BRIAN M.

**U.S. DISTRICT COURT - N.D. OF N.Y.**
**FILED**
JAN 2 6 2015
AT _____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

: INMATE'S
VERIFIED
: CIVIL RIGHTS
COMPLAINT
: PURSUANT TO
42 U.S.C. § 1983

: JURY TRIAL
: DEMAND

: CIVIL #:
9:15-cv-89

—1—

FOURNIER, Corrections Officer at Upstate Correctional Facility; CASEY B.
KEATING, Corrections Officer at Upstate Correctional Facility; JAMIE J.
WILLETT, Corrections Officer at Upstate Correctional Facility; RONALD
LABOCQUE, Corrections Officer at Upstatee Correctional Facility; ADAM C.
RIPA, Corrections Officer at Upstate Correctional Facility; DAVID
GREENE, Corrections Officer at Upstate Correctional Facility; WAYNE
PALMER, Corrections Officer at Upstate Correctional Facility; SCOTT D.
LAMARE, Corrections Officer at Upstate Correctional Facility; MARLA
TRAVERS, Registered Nurse at Upstate Correctional Facility; CHERIE
FAIRCHILD, Registered Nurse at Upstate Correctional Facility; DEBORAH M.
WILLIAMSON, Registered Nurse at Upstate Correctional Facility; JANE
(JOHN) DOE, Registered Nurse at Upstate Correctional Facility; RODNEY
COOK, Registered Nurse at Upstate Correctional Facility; HEATH E.
BAKER, Registered Nurse at Upstate Correctional Facility; JULIA
GORDON, Former Registered Nurse at Upstate Correctional Facility;
RENEE HOLMES, Former Registered Nurse at Upstate Correctional Facility;
M. BROWMAN, Doctor of American Board of Radiology at Upstate Correctional
Facility; M. REHANY, Doctor of American Board of Radiology at Clinton
Correctional Facility; and ASHIT PATEL, Hand Specialist at
Coxsackie Correctional Facility,

                    Defendants.

                                                        X

              I. COMPLAINT

         1. Plaintiff, SHANE HYATT, Pro Se, swears

under penalty of perjury pursuant to 28 U.S.C § 1746, that the following is true and correct to the best of my belief:

## II. INTRODUCTION

2. This is a Civil Rights Action filed by Shane Hyatt, a State Prisoner, for compensatory damages, punitive damages, nominal damages, Declaratory relief, and Injunctive relief under 42 U.S.C. § 1983, alleging excessive use of force, failure to intercede to stop the unnecessary use of force, failure to train, supervise, and address the used of excessive force (deliberate indifference), and deliberate indifference to medical care in violation of the Eighth Amendment to the United States Constitution. Plaintiff also seeks an injunction and damages pursuant to the Americans with Disabilities Act and the Rehabilitation Act.

## III. JURISDICTION AND VENUE

3. This Action is brought pursuant to Title 42 U.S.C. § 1983 to remedy the deprivation, under color of State Law, of right guaranteed by the Eighth Amendment to the United States Constitution.

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this Action is a Civil Action

arising under the Constitution of the United States.

5. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 (a)(3) and (4), in that this Action seeks to redress the deprivation, under Color of State law, of rights secured by Acts of Congress providing for equal rights of persons within the jurisdiction of the United States.

6. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights of Plaintiff and to grant all further relief deemed necessary and proper. Rule 65 of the Federal Rules of Civil Procedure authorizes injunctive relief. This Court has authority to award costs and attorneys fees under 42 U.S.C. § 1988.

7. Venue is proper in the United States District Court for the Northern District of New York pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2), because Defendants named in this Action have their official residence in this district and because substantial events and omissions giving rise to the Claims in this action occurred in this district.

IV. PARTIES

8. Plaintiff SHANE HYATT is and was, at all times relevant hereto, a Prisoner in the custody of the Department of Corrections and Community Supervision ("DOCCS"). At the time of the events relevant hereto, Shane Hyatt was incarcerated at Upstate

—4—

Correctional Facility and Clinton Correctional Facility. Mr. Hyatt is currently incarcerated at Upstate Correctional Facility, P.O. Box 2001, Malone, New York 12953.

9. Defendant CARL J. KOENIGSMANN at all relevant time hereto was the Deputy Commissioner and Chief Medical Officer of the New York State DOCCS. Dr. Koenigsmann has policy-making and supervisory authority with regard to medical care to prisoners in DOCCS' custody and specifically for scheduling medical appointments outside the prison when a prisoner needs specialized treatment or evaluation. His known address is DOCCS, 1220 Washington Ave., Bldg #2, Albany, New York 12226. He is sued in his official and individual capacity for declaratory, monetary, and injunctive relief.

10. Defendant DAIVD A. ROCK at all relevant time hereto was the Superintendent of Upstate Correctional Facility. Superintendent Rock had policy-making and supervisory authority with regard to Upstate, and manages its day-to-day operations, and he authorized and continued the violation of Mr. Hyatt's Constitutional rights. His known address was Upstate Correctional Facility, 309 Barehill Road, P.O. Box 2000, Malone, New York 12953 or DOCCS, 1220 Washington Ave., Bldg #2, Albany, New York 12226. He is sued in his individual capacity for declaratory and monetary relief.

11. Defendant THOMAS L. LAVALLEY at all relevant time hereto was the Superintendent of Clinton Correctional Facility. Superintendent LaValley had policy-making and supervisory

authority with regard to Clinton, and manages its day-to-day operations, and he authorized and continued the violation of Mr. Hyatt's Constitutional rights. His known address was Clinton Correctional Facility, 1156 Route 374, P.O. Box 2000, Dannemora, New York 12929-2000 or DOCCS, 1220 Washington Ave., Bldg.#2, Albany, New York 12226. He is sued in his individual capacity for declaratory and monetary relief.

12. Defendant JAMES E. PROULX at all relevant times hereto was the Deputy Superintendent of Programs at Clinton Correctional Facility. His known address is Clinton Correctional Facility, 1156 Route 374, P.O. Box 2000, Dannemora, New York 12929-2000. He is sued in his individual capacity for declaratory and monetary relief.

13. Defendant VONDA JOHNSON at all relevant times hereto was the Facility Health Services Director at Clinton Correctional Facility. Dr. Johnson had the sole responsibility for providing treatment to the Prisoners under her care in Clinton and the responsibility of determining what outside health referrals are needed by the target population. Her known address is Clinton Correctional Facility, 1156 Route 374, P.O. Box 2000, Dannemora, New York 12929-2000. She is sued in her individual capacity for declaratory and monetary relief.

14. Defendant KANG LEE at all relevant times hereto was a Medical Doctor at Clinton Correctional Facility. Dr. Lee was Mr. Hyatt's Primary Care Provider who was employed by DOCCS

— 6 —

to provide medical care and services to prisoners, including Mr. Hyatt. His last known address was Clinton Correctional Facility, 1156 Route 374, P.O. Box 2000, Dannemora, New York 12929-2000 or DOCCS, 1220 Washington Ave., Bldg. #2, Albany, New York 12226. He is sued in his individual capacity for declaratory and monetary relief.

15. Defendant JAMES SPINNER JR. at all relevant times hereto was a Corrections Officer with the rank of Lieutenant at Upstate Correctional Facility. Lieutenant Spinner acted as the on Scene Supervisor of the Cell extraction on May 12, 2012, and failed to intervene to prevent the misuse of force. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

16. Defendant JERRY J. HEBERT JR. at all relevant times hereto was a Corrections Officer with the rank of Sergeant at Upstate Correctional Facility. Sergeant Hebert acted as the Area Supervisor and used excessive force to Mr. Hyatt believe and failed to intervene to prevent the misuse of force. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

17. Defendant MICHAEL J. EDDY at all relevant times hereto was a Corrections Officer with the rank of Sergeant at Upstate Correctional Facility. Sergeant Eddy acted as the Area Supervisor on February 3, 2012, during the unnecessary beating of Mr. Hyatt and failed

to intervene to prevent the misuse of force and is believe to kicked and struck Mr. Hyatt. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

18. Defendant DAVID BICKFORD at all relevent times hereto was a Corrections Officer with the rank of Sergeant at Upstate Correctional Facility. Sergeant Bickford failed to intervene to prevent the misuse of force. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953 or Doccs, 1220 Washington Ave., Bldg #2, Albany, New York 12226. He is sued in his individual capacity for declaratory and monetary relief.

19. Defendant TIMONTHY RAMSDELL at all relevent times hereto was a Correctional Officer employed at Upstate Correctional Facility. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

20. Defendant TIMONTHY ARQUITT at all relevent times hereto was a Corrections Officer employed at Upstate Correctional Facility. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

21. Defendant BETSY MITCHELL-ODDEY at all relevent times hereto was a Corrections Officer employed at Upstate Correctional Facility. Her known address is Upstate Correctional Facility, P.O. Box 2000, 309

Barehill Road, Malone, New York 12953. She is sued in her individual capacity for declaratory and monetary relief.

22. Defendant BRIAN M. FOURNIER at all relevant times hereto was a Corrections Officer employed at Upstate Correctional Facility. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

23. Defendant CASEY B. KEATING at all relevant times hereto was a Corrections Officer employed at Upstate Correctional Facility. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

24. Defendant JAMIE J. WILLETT at all relevant times hereto was a Corrections Officer employed at Upstate Correctional Facility. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

25. Defendant RONALD LAROCQUE at all relevant times hereto was a Corrections Officer employed at Upstate Correctional Facility. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

26. Defendants ADAM C. RIPA and DAVID GREENE, at all relevant times hereto were Corrections Officers employed at Upstate Correctional Facility. Their known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. They are being sued in their individual capacity for declaratory and monetary relief.

27. Defendants WAYNE PALMER and SCOTT D. LAMARE at all relevant times hereto were Corrections Officers employed at Upstate Correctional Facility. Their known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. They are being sued in their individual capacity for declaratory and monetary relief.

28. Defendants MARLA TRAVERS and CHERIE FAIRCHILD at all relevant times hereto were Registered Nurses employed at Upstate Correctional Facility. Their known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. They are being sued in their individual capacity for declaratory and monetary relief.

29. Defendants DEBORAH M. WILLIAMSON and JANE (or JOHN) DOE at all relevant times hereto were Registered Nurses employed at Upstate Correctional Facility. Their known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. They are sued in their individual capacity for declaratory and monetary relief.

30. Defendant RODNEY COOK at all relevant times hereto was a Registered Nurse employed at Upstate Correctional Facility. His known address is Upstate Correctional Facility, P.O. Box

2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

31. Defendant HEATH E. BAKER at all relevent times hereto was a Registered Nurse employed at Upstate Correctional Facility. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary relief.

32. Defendant JULIA GORDON at all relevent times hereto was a Registered Nurse employed at Upstate Correctional Facility. Her last known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. or Doccs, 1220 Washington Ave., Bldg #2, Albany, New York 12226. She is sued in her individual capacity for declaratory and monetary relief.

33. Defendant RENEE HOLMES at all relevant times hereto was a Registered Nurse employed at Upstate Correctional Facility. Her last known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953 or Doccs, 1220 Washington Ave., Bldg #2, Albany, New York 12226. She is sued in her individual capacity for declaratory and monetary relief.

34. Defendant M. BROWMAN at all relevent times hereto was a Medical Doctor employed or retained by Doccs to provide medical services at Upstate Correctional Facility. His known address is Upstate Correctional Facility, P.O. Box 2000, 309 Barehill Road, Malone, New York 12953. He is sued in his individual capacity for declaratory and monetary

relief.

35. Defendant M. REHANY at all relevant times hereto was a Medical Doctor employed or retained by DOCCS to provide medical services at Clinton Correctional Facility. His known address is Clinton Correctional Facility, 1156 Route 374, P.O. Box 2000, Dannemora, New York 12929-2000. He is sued in his individual capacity for declaratory and monetary relief.

36. Defendant ASHIT PATEL at all relevant times hereto was a Physician employed or retained by DOCCS to provide medical services at Coxsackie Correctional Facility. His known address is Coxsackie Correctional Facility, 11260 Route 9 West, P.O. Box 2000, West Coxsackie, New York 12051-0200. He is sued in his individual capacity for declaratory and monetary relief.

37. All the Defendants at all relevant times were acting and continue to act under color of state law.

## V. PREVIOUS LAWSUITS

38. Plaintiff has filed other lawsuits in Federal Court and State Court.

39. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Joseph F. Bellnier in the United States District Court, Southern District of New York, Docket # 09 civ. 6594 (CM)(AJP), under Honorable Colleen McMahon and Honorable Andrew J. Peck.

The case was dismissed. The lawsuit was filed on July 31, 2009, and I learned of the outcome on or about October 23, 2009.

40. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Brian Fischer in the Albany County Supreme Court, Index # 5968-11, under Honorable Thomas J. McNamara, which was transferred to the Supreme Court, Appellate Division, Third Department, under Honorables Peters, P.J., Stein, McCarthy, and Garry, JJ. The case was dismissed. The lawsuit was filed on September 8, 2011, and I learned of the outcome on or about June 17, 2013.

41. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Brian Fischer in the Albany County Supreme Court, Index # 5125-12, under Honorable Gerald W. Connolly, which was transferred to the Supreme Court, Appellate Division, Third Department, under Honorables Rose, J.P., McCarthy, Spain, and Garry, JJ. The case was granted in part and confirmed in part. The lawsuit was filed on September 13, 2012, and I learned of the outcome on or about November 1, 2013.

42. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Brian Fischer in the Albany County Supreme Court, Index # 5027-12, under Honorable Gerald W. Connolly, which was transferred to the Supreme Court, Appellate Division, Third Department, under Honorables Lahtinen, J.P., McCarthy, Rose, and Egan Jr., JJ. The case was granted in part and confirmed in part. The lawsuit was filed on September 7, 2012, and I learned of the

outcome on or about April 28, 2014.

43. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Brian Fischer in the Albany County Supreme Court, Index # 4935-12, under Honorable Michael C. Lynch, which was transferred to the Supreme Court, Appellate Division, Third Department, under Honorables Lahtinen, J.P., Stein, McCarthy, Rose, and Egan Jr., J.J. The case was dismissed. The lawsuit was filed on September 4, 2012, and I learned of the outcome on or about June 25, 2014.

44. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Brian Fischer in the Clinton County Supreme Court, Index # 2013-0641, under Honorable John T. Ellis. The case was dismissed. The lawsuit was filed on April 24, 2013, and I learned of the outcome on or about August 5, 2013.

45. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Brian Fischer in the Albany County Supreme Court, Index # 564-13, under Honorables Thomas J. McNamara and Joseph C. Teresi. The case was dismissed. The lawsuit was filed on January 30, 2013, and I learned of the outcome on or about June 13, 2013.

46. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Brian Fischer in the Albany County Supreme Court, Index # 559-13, under Honorables Thomas J. McNamara and Joseph C. Teresi. The case was dismissed. The lawsuit was filed on January 30, 2013, and I learned of the outcome on or about June 13, 2013.

47. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Brian Fischer in the Albany County Supreme Court, Index #550-13, under Honorables Thomas J. McNamara and Joseph C. Teresi. The case was dismissed. The lawsuit was filed on January 29, 2013, and I learned of the outcome on or about June 13, 2013.

48. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Anthony J. Annucci in the Clinton County Supreme Court, Index # 2014-105, under Honorable S. Peter Feldstein. The case was dismissed and is currently on appeal in the Supreme Court, Appellate Division, Third Department. The lawsuit was filed on January 21, 2014, and I learned of the outcome on August 4, 2014.

49. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Anthony J. Annucci in the Clinton County Supreme Court, Index # 2014-174, under Honorable S. Peter Feldstein. The case was dismissed and is currently on appeal in the Supreme Court, Appellate Division, Third Department. The lawsuit was filed on February 5, 2014, and I learned of the outcome on August 4, 2014.

50. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Anthony J. Annucci in the Clinton County Supreme Court, Index # 2014-292, under Honorable S. Peter Feldston which was transferred to the Supreme Court, Appellate Division, Third Department. The case is currently pending. The lawsuit was filed on February 28, 2014.

51. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Anthony J. Annucci in the Clinton County Supreme Court, Index # 2014-258, under Honorable S. Peter Feldstein, which was transferred to the Supreme Court, Appellate Division, Third Department. The case is currently pending. The lawsuit was filed on February 21, 2014.

52. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Anthony J. Annucci in the Franklin County Supreme Court, Index # 2014-760, under Honorable S. Peter Feldstein. The case is currently pending. The lawsuit was filed on October 2, 2014.

53. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Anthony J. Annucci in the Franklin County Supreme Court, Index # 2014-731, under Honorable S. Peter Feldstein. The case is currently pending. The lawsuit was filed on September 24, 2014.

54. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Anthony J. Annucci in the Clinton County Supreme Court, Index # 2014-297, under Honorable S. Peter Feldstein. The case is currently pending. The lawsuit was filed on February 28, 2014.

55. The parties to the previous lawsuit were Claimant Shane Hyatt and Defendant The State of New York in the Court of Claims of New York State, Claim # 124473, under Honorable Richard E. Sise. The case is currently pending. The lawsuit was filed on June 3, 2014.

56. The parties to the previous lawsuit were Claimant Shane

Hyatt and Defendant The State of New York in the Court of Claims of New York State, Claim # 122315, under Honorable Richard E. Sise. The case is currently pending. The lawsuit was filed on January 28, 2013.

57. The parties to the previous lawsuit were Claimant Shane Hyatt and Defendant The State of New York in the Court of Claims of New York State, Claim # 118916, under Honorables Richard E. Sise and W. Brooks De Bow. The case is currently pending. The lawsuit was filed on September 9, 2010.

58. The parties to the previous lawsuit were Petitioner Shane Hyatt and Respondent Anthony J. Annucci in the Franklin County Supreme Court, Index # 2014-470, under Honorable S. Peter Feldstein. The case is currently pending. The lawsuit was filed on June 17, 2014.

59. The parties to the previous lawsuit were Claimant Shane Hyatt and Defendant The State of New York in the Court of Claims of New York, Claim # 118516, under Honorables Richard E. Sise and Renee Forgensi Minarik. The case is currently pending. The lawsuit was filed on June 11, 2010.

## VI. STATEMENT OF FACTS

### Supervisory Liability For Deliberate Indifference to Excessive Use of Force

60. On information and belief, when a Prisoner files a grievance alleging Excessive Use of Force, the grievance Clerk logged the grievance, give it a grievance calender number, and forward the grievance

— 17—

to the Superintendent by the Close of business on the day the complaint is received. See Title 7 N.Y.C.R.R. Part 701 and DOCCS' Directive 4040 §701.8.

61. On April 19, 2010, Plaintiff Shane Hyatt ("Plaintiff") notified Defendant David A. Rock ("Def. Rock") about Corrections Officer Michael Carr and Corrections Officer Jason Monacelli engaging in excessive use of force against him during a cell extraction on April 5, 2010. See Grievance Complaint # UST-42320-10 (Exhibit A).

62. On February 8, 2012, Plaintiff again notified Def. Rock about Corrections Officers engaging in excessive use of force against him during a cell extraction on January 31, 2012. See Grievance Complaint # UST-48410-12. (Exhibit A).

63. On February 24, 2012, Plaintiff notified Def. Rock that DOCCS' employees be train on how to adequately use force, to put a cease to the excessive use of force and the use of chemical agents on Prisoners with medical history such as Asthma, and that the DOCCS' employee with the hand-held camera record whats going on in the cell and stop pointing the camera on people back, the floor, and the ceiling. See Grievance Complaint # UST-48543-12. (Exhibit B)

64. Def. Rock has been placed on notice of the abusive conduct and the used of excessive force by Defendants Timothy Ramsdell ("Def. Ramsdell"), Timothy Arquitt ("Def. Arquitt"), Betsy Mitchell-Oddey ("Def. Mitchell"), Brian M. Fournier ("Def. Fournier"), Casey B. Keating ("Def. Keating"), Jamie J. Willett ("Def. Willett"), Ronald

Larocque ("Def. Larocque"), Adam C. Ripa ("Def. Ripa") and other Corrections Staff by number of Complaints and grievances over many years, but has failed to take disciplinary action against them or otherwise to control their behavior, train them on when they may strike a Prisoner, and supervise their used of force.

65. Def. Rock has supported and condone the use of excessive force by the Corrections Staff at Upstate Correctional Facility ("Upstate").

Misuse of Force on February 3, 2012

66. On February 3, 2012, Plaintiff was taken out his cell (10 building - C1 gallery - 20 cell) at Upstate by Corrections Officer Michael Riley ("C.O. Riley") and Def. Keating to see a Nurse Practitioner about injuries he sustained on January 31, 2012, and about him vomiting after lunch on January 31, 2012, and February 2, 2012, and the chest pain he was having.

67. When Plaintiff was finished seeing the Nurse Practitioner he was told by C.O. Riley that he was schedule for an urinalysis test.

68. C.O. Riley and Def. Keating then escorted Plaintiff to 10 building lower holding pen ("holding pen") where C.O. Riley switch Plaintiff's handcuff from behind his back to the front of him with a waist chain.

69. C.O. Riley and Def. Keating escorted Plaintiff from the holding pen to the 10 building OMH pen ("OMH pen"). Once Plaintiff was placed in the OMH pen C.O. Riley gave him a cup of water.

70. Approximately ("approx.") 30 minutes past before Def. Ramsdell came to the OMH pen and told Plaintiff that he was put in for a suspicion urinalysis test by Defendant Michael J. Eddy ("Def. Eddy") then he left the OMH pen.

71. Def. Ramsdell and Def. Arquitt brought Plaintiff a cup of water then Plaintiff informed them that he was ready to urinate.

72. Def. Ramsdell and Def. Arquitt escorted Plaintiff downstairs to 10 building inmate bathroom ("bathroom").

73. While in front of the bathroom Def. Ramsdell handed Plaintiff an urinalysis cup then Def. Arquitt escorted Plaintiff into the bathroom.

74. When inside the bathroom and the door was closed Def. Arquitt order that Plaintiff show his penis and lift his scrotum.

75. Plaintiff then turned toward the toilet with his back to Def. Arquitt.

76. Without warning or provocation Def. Arquitt struck Plaintiff in the back.

77. Plaintiff tried to turn around but Def. Arquitt jumped in the air and Kicked Plaintiff in the back at which point Plaintiff fell onto the toilet and rolled onto the floor.

78. Plaintiff tried to get back up onto his feet but stop when Def. Ramsdell rushed through the bathroom door saying "Bright Light! Big City!" and started to Kicked Plaintiff with Def. Arquitt in the Plaintiff's back and the right side of his face.

79. Def. Fournier, Def. Mitchell, Def. Willett, Def. Larocque, Def. Keating and Def. Eddy followed Def. Ramsdell into the bathroom.

80. Def. Fournier, Def. Mitchell, Def. Willett, Def. Larocque, and Def. Keating did not intervene to prevent the unnecessarily beating of Plaintiff, and the Plaintiff believes that these Defendants also Kicked and struck him.

81. During this unnecessarily beating one of the Defendants struck Plaintiff on the right side of his face causing swelling the size of a gumball and small abrasion at the outer corner of right eye. The Plaintiff also received small crack mid-lower lip, redden at the outer corner of right eye, pinkened with moderate swelling on the left side of head, 1/4" curved superficial laceration on right wrist, 2" superficial scratch and abrasion on left forearm, and 1/4" superficial scratch on left bicep.

82. During this unnecessarily beating Def. Eddy remained in the doorway of the bathroom and did not intervene to prevent the unnecessarily beating.

83. Def. Eddy order Def. Mitchell to put Plaintiff's legs in a Figure Four position. When she accomplish putting Plaintiff's legs in the Figure Four position Def. Mitchell stood on Plaintiff's right Foot causing 2 pin-point abrasions on top of Plaintiff's right Foot and severe pain in Plaintiff's right Foot.

84. During this unnecessarily beating Plaintiff did not resist or threaten the Defendants in any Fashion or break any prison rules. The Plaintiff was also restrained with hand restraints and waist chain and had shower shoes on throughout the unnecessarily beating.

85. These same Defendants have repeatedly engaged in the used of excessive Force against Prisoners in the past, Falsified reports to justified their misuse of Force, and Falsified injuries to make it look like Prisoners assaulted them First and they only use Force in self-defense.

86. After the above-described beating, Plaintiff was escorted to the holding pen where Lieutenant John Doe stood outside laughing and smiling at Plaintiff. Lieutenant John Doe whisper to Plaintiff "there is more to come" then he left.

87. The Plaintiff was escorted to his cell by C.O. Riley

and Corrections Officer John A. McBath ("C.O. McBath"), where he was medically evaluated by Registered Nurse Cherie Fairchild ("RN Fairchild") and had photos taken of his injuries by C.O. McBath.

88. As a result of the above-described beating, Plaintiff received a superficial laceration in the middle of his bottom lip, a 1/4" curved superficial laceration on right wrist, a 2" superficial abrasion on left forearm, a 1/4" scratch on left bicep, an abrasion and swelling the size of a gumball and redness around the outer corner of right eye, moderate amount of swelling and pinkness on the left side of the head, and a small pin point red areas on top of right foot.

89. The Plaintiff suffered pain in his lower back and right foot and excruciating headaches as a result of the unnecessary beating.

Exhaustion of Administrative Remedies of the February 3, 2012, Beating

90. On March 2, 2012, Plaintiff filed a grievance in regard to him being beating and Corrections Officers failing to intervene to stop the unnecessary beating and that all the DOCCS' employees involved be discipline and be move to another facility because he was threaten by Def. Eddy and other Corrections Officers that he would be assault or kill if he file a grievance. See Grievance Complaint# UST-48625-12. (Exhibit C).

91. On or about March 30, 2012, Plaintiff learned that his grievance was denied, and he appeal the Superintendent's decision to

-23-

the Central Office Review Committee ("CORC") on or about April 2, 2012.

92. On or about September 6, 2012, Plaintiff learned that his request in his grievance and appeal was unanimously denied as without merit by CORC.

Excessive Use of Force on May 12, 2012

93. On May 12, 2012, Corrections Officer Eric J. Woods had put Plaintiff down on the list for barber shop for 10 building - C1 gallery - 14 - 25 cell. Plaintiff at the time was housed in 10 building - C1 gallery - 20 cell at Upstate.

94. Def. Willett and Corrections Officer Clarence J. Labarge ("C.O. Labarge") came to Plaintiff's cell and they told Plaintiff "You are not coming out for barber shop" then Def. Willett and Corrections Officer John Doe ("C.O. Doe") went to the back of the company to start barber shop.

95. C.O. Labarge open Plaintiff's feed-up hatch to give Plaintiff his book and at that point Plaintiff stuck his arm out the hatch and told C.O. Labarge "I am entitled to go to the barber shop. C.O. Wood put me down on the list," and Plaintiff also told C.O. Labarge "I am not pulling my arm in until I speak to the Sergeant."

96. C.O. Labarge notified Defendant Jerry J. Hebert Jr. ("Def. Hebert") on the walkie talkie. Def. Hebert came to Plaintiff's cell

2nd told Plaintiff "Pull your arm in before I have an Officer break it," and Plaintiff told him "I ain't pulling my arm in" then Def. Hebert left.

97. A few minutes later, Def. Hebert, Defendant David Greene ("Def Greene") and Corrections Officer John Doe #2 ("C.O. Doe #2") came to Plaintiff's cell and Def. Hebert told Plaintiff "I am going to order this Officer (C.O. Doe #2) to strike you with the baton on your arm."

98. C.O. Doe #2 with a malice look on his face lift the baton above his head While Def. Greene record it on a hand-held camera and Plaintiff pulled his arm in fearing C.O. Doe #2 would break his arm under the order of Def. Hebert.

99. After Def. Hebert, Def. Greene, and C.O. Doe #2 left from in front of Plaintiff's cell C.O. Labarge came by Plaintiff's cell and said to Plaintiff "I am a motherfucker right" then got on his walkie talkie and told Def. Hebert "Hyatt is blocking his window with a towel."

100. Def. Hebert came to Plaintiff's cell and with a malice smile on his face he told Plaintiff "Hyatt take the towel down and come out for a cell search so we can take your towels."

101. Plaintiff told Def. Hebert "You know I don't have a towel up and I'm not coming out for a search because I did not block my window so there is no reason to take my towels."

— 25 —

102. Def. Hebert told Plaintiff "I'm sending my boys in there to bring you out the hard way," then he left.

103. A few minutes later Defendant James Spinner Jr. ("Def. Spinner") came to Plaintiff's cell and told Plaintiff "Your making my day hard and if I have to send my Officers in there, your going to get hurt so come out."

104. Plaintiff told Def. Spinner "I am in fear for my life and my property and I am not coming out until I speak to a Captain, Deputy, or the Superintendent," then Def. Spinner left the gallery.

105. While Def. Spinner, Def. Hebert, Def. Fournier, Def. Ripa, Def. Greene, Def. Willet, Defendant Wayne Palmer ("Def. Palmer"), Defendant Scott D. Lamare ("Def. Lamare"), Defendant David Bickford ("Def. Bickford") and to Plaintiff believes Other Corrections Staff was standing in front of C-1 gallery laughing and saying "how they was going to harm Plaintiff." This was heard by Plaintiff, Prisoner A. Branch 01-A-2934("Prisoner Branch"), Darrell Newton 98-B-1155 ("Prisoner Newton"), Prisoner Willie Frazier 07-A-4091("Prisoner Frazier"), Donnie Brown ("Prisoner Brown") 06-B-3426, Prisoner Willie Scott 11-A-3402 ("Prisoner Scott"), Prisoner Richard Springer 06-A-6057 ("Prisoner Springer"), and Prisoner Ramon Pequero 07-B-1650 ("Prisoner Pequero").

106. An "Extraction Team" was assembled which consisted of Def. Fournier, Def. Ripa, Def. Lamare, and Def. Palmer, each of whom was assigned

a role in restraining the Plaintiff. The Defendants wear protective padding and a helmet and their objective was to gain physical control of the Plaintiff and remove him from his cell with minimal risk of injury to themself and Plaintiff but was not authorized to use physical force beyond that which was necessary to maintain or regain control.

107. At approx. 7:13pm the Extraction Team ("Team"), Def. Spinner, Def. Bickford, Def. Hebert, Def. Greene whom was assigned to videotape the cell extraction with a hand-held camera, and Def. Willett whom was assigned to open Plaintiff's cell door with a hand-held crank, came to Plaintiff's cell.

108. At approx. 7:17pm Def. Hebert came to Plaintiff's cell door and told Plaintiff "Come out the cell for a cell search."

109. Plaintiff told Def. Hebert "He was coming out."

110. Def. Hebert told Plaintiff "Put your back to the door," which Plaintiff did.

111. Def. Hebert then said "Hyatt remove the pillow from the hatch."

112. Plaintiff turned around and said "I do not have any pillow in the hatch."

113. Def. Palmer open the hatch and Def. Ripa used the ram and pretend to be clearing the hatch while trying to hit Plaintiff with the ram but Plaintiff jumped back then Def. Hebert sprayed chemical agent into Plaintiff's cell who has a history of asthma and heartmurnur. then the hatch was closed.

114. Plaintiff rushed to the cell door and told Def. Hebert "I am coming out."

115. Def. Hebert said to Plaintiff with a malice grin on his face "Comply with all orders," so when Plaintiff put his back to the cell door Def. Hebert said "Hyatt take the pillow out the hatch."

116. Plaintiff yelled on the gate "there is no pillow in the hatch, I don't have any pillow in my cell," then Def. Palmer open the hatch again and Def. Ripa used the ram and pretend to be clearing the hatch and pretended to be having difficulty getting the ram back out the hatch then Def. Hebert sprayed chemical agent into Plaintiff's cell hatch again.

117. When the hatch was closed Plaintiff rushed to the cell door telling Def. Hebert "I am coming out," and again with a malice grin on his face Def. Hebert told Plaintiff "comply with all orders."

118. When Plaintiff put his back to the cell door Def. Hebert lied and said "Hyatt take the mattress out the hatch."

119. Plaintiff turned around and said "there is no mattress in the hatch," then the hatch was open for a third time and Def. Pipa pretended to be using the ram to clear the hatch and again he pretended to be having a difficulty removing the ram.

120. When the ram was removed from the hatch Def. Hebert sprayed the chemical agent into the Plaintiff's cell for a third time then Def. Palmer closed hatch.

121. After 2 more times of Plaintiff's cell door hatch being open, and the Def. Pipa pretended to be using the ram to clear the hatch, and Def. Hebert spraying chemical agent into Plaintiff's cell, and Def. Palmer closing the hatch and Def. Hebert totally disregard to Plaintiff's request to come out his cell for the search Def. Willett open Plaintiff's cell door with the hand-held crank.

121. Def. Fournier rushed into Plaintiff's cell first with the hand-held shield in which he dropped onto the floor and punched Plaintiff in the face and tackle Plaintiff onto the far side of the desk near the shower.

122. Once on the desk Def. Fournier and

Def. Ripa started to punched Plaintiff in the Face and head.

123. Somebody then told Def. Fournier and Def. Ripa to take Plaintiff to the ground. The Plaintiff believes that this person was Def. Hebert.

124 Plaintiff was then slammed onto the Floor where Def. Ripa and Def. Fournier got on each side of Plaintiff and started to punched Plaintiff in the Face again.

125. Somebody then came to the left side of Plaintiff and sprayed the Chemical agent in Plaintiff's Face two times and backed away. The Plaintiff believes this person to be Def. Hebert since he was the last person Plaintiff saw with the Chemical agent.

126. Somebody them put their hand down Plaintiff's pant and inserted a Foreign Object in Plaintiff's anus. The Plaintiff believes this person to be Def. Fournier. See Paragraph #137 For why Plaintiff believe it was Def. Fournier.

127. Def. Palmer secured Plaintiff's legs the whole time Plaintiff was laying on the Floor.

128. Def. Ripa continue to punched Plaintiff in the head and Face while Def. Fournier started to slammed Plaintiff's Forehead against the Floor repeatedly then Def.

Fournier stomped on Plaintiff's left hand causing severe pain.

129. Def. Hebert then told Def. Lamare and Def. Palmer to put the mechanical restraints on Plaintiff. Def. Lamare placed the hand cuffs on Plaintiff while Def. Palmer placed the leg restraints on Plaintiff.

130. When Def. Lamare placed the hand cuffs on Plaintiff he did it so tight that the hand cuffs cut and bruises both of Plaintiff's wrists and cause Plaintiff severe pain.

131. Plaintiff was lifted to his feet by Def. Fournier and Def. Ripa then Def. Ripa grabbed and forcefully squeezed Plaintiff's penis and scrotum causing Plaintiff severe pain.

132. During the unnecessary beating of the Plaintiff in 10 building - C1 gallery - 20 cell Def. Lamare, Def. Hebert, Def. Spinner, Def. Palmer, and Def. Bickford did nothing to intervene to prevent the unnecessary beating of the Plaintiff, and the Plaintiff believes that when he was on the ground Def. Lamare and Def. Palmer also struck him and used unnecessary force against him.

133. During the unnecessary beating of the Plaintiff in the cell Def. Greene recorded the entire assault and did nothing to intervene to prevent the unnecessary beating of Plaintiff.

134. The Plaintiff believes that Def. Willett

remained outside Plaintiff's cell observing the unnecessary beating and that Def. Willett did nothing to intervene to prevent the unnecessary beating of Plaintiff.

135. Plaintiff was escorted to the decontamination room from his cell by Def. Fournier and Def. Ripa to be decontaminated.

136. While in the decontamination room Def. Fournier slammed Plaintiff's head against the wall a few time and Def. Ripa was pulling down on Plaintiff's hand restraints causing Plaintiff to screamed out in pain.

137. While Plaintiff was screaming Def. Fournier whisper in his ear "how you like my finger up your ass, you ass-hole."

138. Def. Palmer cut Plaintiff's pants off him in the decontamination room.

139. While Plaintiff was screaming because of the Defendants pulling down on the hand restraints and pinching him Def. Hebert told him "to be quiet" and Plaintiff told Def. Hebert "No, tell the officers to stop pulling on my cuffs and pinching me"

140. Def. Fournier then whisper in Plaintiff's ear "I hope you go to the infirmary so we can finish you off"

141. After Plaintiff was done being decontaminated he was escorted to the holding pen from the decontamination room.

142. While Plaintiff was in the holding pen waiting to be medical evaluate by Defendant Marla Travers ("Def. Travers") and Defendant Deborah M. Williamson ("Def. Williamson") Def. Fournier and Def. Ripa was pulling down on the hand restraints and pinching Plaintiff causing Plaintiff to scream in pain.

143. At one point when Plaintiff was waiting to be medical evaluate Def. Fournier told Def. Ripa "take him to the ground, say he is resisting."

144. While Def. Travers was medical evaluating Plaintiff he told her that his "hand was hurting" but she failed to do a physical examination of Plaintiff's hand and to treat Plaintiff for the pain in his hand.

145. Def. Travers informed Plaintiff that he would need sutures and had to go to the infirmary for the sutures but Plaintiff told Def. Travers "that he was not going to the infirmary and that she could do everything in the pens."

146. While Def. Travers was cleaning the 1"x1" laceration to Plaintiff's right eyebrow and appling the steri-strips Def. Fournier was pushing down on the hand restraints with his knee causing Plaintiff to scream in pain.

147. After the excessive use of Force Def. Travers and Def. Williamson downplayed and cover-up Plaintiff's injuries by only noting that Plaintiff Sufferd From (1) Left eye swelling and bruised area; (2) Left cheek with abrasions; (3) Upper lip swollen; (4) Nose bleeding; (5) Right eye swollen and bruised; and (6) Laceration to Right eyebrow approx. 1" x 1" appears like a T when in actuality Plaintiff sufferd From more injuries which were (1) entire Face swollen; (2) blood in both eyes; (3) bruises cover entire Face; and (4) Pain in both hands and Face.

148. After the Photos of Plaintiff's injuries were taken by Corrections Officer Mouthrop ("C.O. Mouthrop") Plaintiff was escorted back to his cell From the holding pen by Def. Fournier and Def. Ripa.

149. While being escorted back to his cell Def. Ripa and Def. Fournier was bending Plaintiff's Fingers and wrists causing Plaintiff excruciating pain.

150. Plaintiff was placed in his cell and his arms was pulled through the Feed-up hatch by the retention strap by Def. Lamara.

151. Once Plaintiff's arms was out the Feed-up hatch Def. Ripa started to bend and twist Plaintiff's Fingers on his left hand; breaking bones in Plaintiff's left pinkie and left middle Finger causing excruciating pain in Plaintiff's left arm and hand and causing him to scream out in pain.

152. Def. Fournier was pulling down on Plaintiff's right arm trying to break it causing excruciating pain in Plaintiff's right

-34-

arm and to scream in pain.

153. During the time Plaintiff was screaming in pain and complaining about Def. Fournier and Def. Ripe pulling on his hand restraints, pinching him, bending and twisting his fingers and wrists, slamming his head against the wall, and trying to break his arm Def. Travers, Def. Williamson, Def. Hebert, Def. Lamere, Def. Greene, Def. Palmer, Def. Spinner, Def. Willett, and Def. Bickford did not intervene to prevent these malice and sadistic act of force on Plaintiff.

154. Once Plaintiff was secure in his cell the Prisoners on C1 gallery started calling for Medical Assistance for him because he was having a difficulty breathing in his cell since the Chemical agent was still lingering in his cell.

155. C.O. Labarge came to Plaintiff's cell and Plaintiff told him "he could not breathe" and C.O. Labarge call for a nurse.

156. Def. Travers and Def. Hebert reported to Plaintiff's cell and Plaintiff told Def. Travers that "he needed his cell clean cause he could not breathe, that his hand hurt and he thought his fingers was broken, and that Def. Fournier stuck his finger in Plaintiff's anus", then Def. Travers smiled and insist that "Plaintiff go to the infirmary so she could treat him better there."

157. Def. Hebert then told Plaintiff "We are going

-35-

to kill you there plus there is no cameras down there," so Plaintiff told Def. Travers "I am not going to the infirmary, you can treat me at the cell, and give me something for the pain!" then without even conducting an examination of Plaintiff's hands and breathing Def. Travers walked off with Def. Hebert saying Plaintiff refused treatment.

158. Despite the severity of Plaintiff's injuries and the excruciating pain Plaintiff suffered as a result of his injuries, no pain killer were given to Plaintiff from Def. Travers and/or Def. Williamson after the unnecessarily beating. Plaintiff endured severe pain throughout the night from his extensive injuries which kept him awake majority of the night.

159. When Plaintiff did go to sleep he had nightmares of the unnecessarily beating and the sexual assault by the Corrections Officers which kept waking him up.

Exhaustion of Administrative Remedies of the May 12, 2012, Beating and etc.

160. On May 22, 2012, Plaintiff filed a grievance in regard to the excessive used of force and the sexual assault during the May 12, 2012, cell extraction, the death threats, Officers failing to intercede to stop the unnecessary beating, and medical staff deliberate indifferent to his medical need. See. Grievance Complaint# UST-49338-12.

161. On or about June 22, 2012, Plaintiff learned that his grievance was denied and he Appeal the Superintendent's decision to CORC on or about June 25, 2012.

162. On or about October 31, 2012, Plaintiff learned that his request in his grievance and Appeal was denied by CORC and that CORC upholds the determination of the Superintendent. (Exhibit D)

## Deliberate Indifference to a Serious Medical Need at Upstate

163. On May 13, 2012, at approx. 7:00 AM Defendant Registered Nurse Jane (or John) Doe came to Plaintiff's cell (10-C1-20) for a follow-up medical care. Plaintiff showed Defendant Registered Nurse Jane (or John) Doe ("Def. RN Doe") his left hand and told Def. RN Doe that he was having migraine and having severe pain in his hands, arms, nose, and face but despite the serious pain, Def. RN Doe never prescribe any pain killer to Plaintiff nor did Def. RN Doe conduct an examination of Plaintiff's left hand which if the examination was done it would of require Def. RN Doe to send Plaintiff to a Hospital so he could have his broken hand treated.

164. Plaintiff endured severe pain throughout the day from his extensive injuries as a result of Def. RN Doe not providing him with any pain killer.

165. At approx. 8:35 PM When Plaintiff could not bear the pain any longer and his high from smoking marijuana was wearing off Plaintiff and the other Prisoners on C1 gallery begin to bang on their gate and scream for Emergency Sick Call ("ESC") for Plaintiff. Def. Willett and Def. Williamson responded to Plaintiff's cell. Def. Williamson asked Plaintiff what was wrong and Plaintiff told her "he was having a difficult time breathing and he was going through

severe pain." Once Plaintiff was done Def. Willett told Def. Williamson "let's go he do not need medical assistance." Plaintiff then told Def. Willett "Shut the Fuck up you are not medical," then Def. Williamson left without examining Plaintiff nor providing him any pain killer for the severe pain he suffered from.

166. Approx 2 hours later when Plaintiff thought Def. Williamson was gone, he stop Corrections Officer Bradley E. Thompson ("C.O. Thompson") during his rounds and asked him for "ESC," and C.O. Thompson told him "No!," Plaintiff then told C.O. Thompson "Since I can't sleep cause of the severe pain I am going through, you and the night officers won't sleep cause we going to bang all night on our gate." C.O. Thompson then stated to Plaintiff "you don't learn but you will learn when we get you to the infirmary," and left.

167. Approx 5 minutes later Defendant Registered Nurse Rodney Cook ("Def. Cook"), Def. Williamson, and an innominate Corrections Officer came to Plaintiff's cell. Plaintiff told them he was in severe pain and that his right nostril started to bleed again and when he was done Def. Cook told Def. Williamson to move back and when she did move back Def. Cook asked Plaintiff with a malice grin "what did you said you trying to kill yourself," Plaintiff yelled on the gate "No! I did not say that," then he stop talking to Def. Cook. Despite the severity of Plaintiff's injuries and the excruciating pain Plaintiff suffered as a result of his injuries, Def. Cook, Def. Williamson, and an innominate Corrections Officer without given Plaintiff any pain killer and conducting an examination of Plaintiff. Plaintiff endured severe pain throughout the night from his extensive injuries, which kept him awake all night.

168. On May 14, 2012, during Sick Call Plaintiff asked Defendant Registered Nurse Heath E. Baker ("Def. Baker") For Pain medication For the pain in his Face, mouth, nose, left arm, jaw, left hand, above his right eye, and For the migraine. Plaintiff also asked For something to Clean his bruises and cuts and to have his left Pinkie reset but Def. Baker refused to treat Plaintiff and send him to the Hospital. Def. Baker told Plaintiff "your down For X-ray and I will treat you when your X-ray results Comeback", then he left without given Plaintiff any pain Killer.

170. Plaintiff suffers migraine and severe Pain throughout the day From his extensive injuries.

171. Approx. 3 hours later Plaintiff was taken to Franklin Correctional Facility ("Franklin") Where X-rays was taken of his Nasal Bones, Orbits, and Left Hand by Nurse Jane Doe ("Nurse Doe"), Who gave Plaintiff some pain medication For the pain when he asked her For pain Killer.

172. Nurse Doe told Plaintiff that "From the X-rays she can tell he had a hairline Fracture, trauma to the head, Face, and nose, and that there was tiny bones broken in his left hand," then she told the two escort Officers that they should call Upstate and asked to take Plaintiff to Alice Hyde (Medical Center).

173. When Nurse Doe was Finish with Plaintiff's X-rays she told the escort Sergeant and Corrections Officers that "She Wanted the Radiology Doctor at Franklin to review the X-rays

and when the Doctor was done she would send the x-rays and the results to Upstate," but the Sergeant told her that "the Administration at Upstate wanted their Radiology Doctor to review the X-rays." After several request from Nurse Doe to have the Radiology Doctor at Franklin to review the x-rays and the Sergeant kept refusing her request Nurse Doe gave the x-rays over to the Sergeant.

174. After Plaintiff was brought back to Upstate from Franklin he requested ESC but Def. Baker refused to come to Plaintiff's cell and to treat Plaintiff for the pain like he had told Plaintiff he would do at Sick Call. Plaintiff suffered migraine and severe pain throughout the entire day and night from his extensive injuries.

175. On May 14, 2012, Defendant M. Browman ("Def. Browman") the Radiology Doctor reviewed the Plaintiff's x-rays at Upstate and falsified the x-rays results by lying that "Plaintiff's x-rays showed no orbital fracture, no evidence of fracture to nasal bones, and no fracture, dislocation, or adjacent soft tissue abnormality was demonstrated in Plaintiff's left hand," to cover up the unnecessary beating of Plaintiff by the Corrections Officers which prevented Plaintiff from receiving the adequate treatment for his injuries in a timely manner and endured severe pain for months from his extensive injuries.

176. Def. Browman also stated that "the Frontal view of Plaintiff's nasal bones was marred by motion artifact," but he

Failed to Order another Frontal view x-ray of Plaintiff's nasal bones so he could make a professional judgment.

177. On May 15, 2012, during Sick-call Plaintiff asked Defendant Registered Nurse Julia Gordon ("Def. Gordon") to be taken to a Hospital to have his fingers reset and to be given pain medication but Def. Gordon refused to send Plaintiff to a Hospital to be treated for the obvious injuries to Plaintiff's fingers and refused to give Plaintiff any pain medication until his x-ray results came back. Plaintiff had to endured severe pain throughout the entire day and night from his extensive injuries.

178. On May 16, 2012, at approx 6:35 AM during Sick-call Plaintiff showed Defendant Registered Nurse Cherie Fairchild ("Def. Fairchild") his left hand and that he could not bend his fingers but Def. Fairchild refused to send Plaintiff to a Hospital to have his broken hand treated and despite the severity of Plaintiff's injuries and the excruciating pain and migraine headaches he suffered as a result of the injuries, Def. Fairchild only gave the Plaintiff 4 packages of Ibuprofen (NSAID [nonsteroidal anti-inflammatory drug]) 200mg. Def. Fairchild told Plaintiff "he was down to see the Nurse Practitioner." Plaintiff endured severe pain and migraine headaches throughout the entire day and night from his extensive injuries.

179. On May 17, 2012, at approx 6:40 AM during Sick-call Def. Fairchild refused to send Plaintiff to a Hospital to have his broken hand treated and to gave Plaintiff stronger pain killers. Despite

the excruciating pain and migraine headaches he suffered as a result of the injuries, Def. Fairchild only gave him 4 packages of Ibuprofen 200mg which did not help alleviated the pain Plaintiff endured. Def. Fairchild told the Plaintiff that "he would see the Nurse Practitioner today," then she left.

180. Later on that day while coming from his Tier 2 Hearing Plaintiff asked Def. Fairchild "What had happen to his call-out," and she told him "the officer said you refused." Plaintiff then told her "he never refused his call-out," then he asked her "Why she never came to see if he refused and bring him a refusal form." Plaintiff was then escorted back to his cell.

181. On May 18, 2012, at approx. 6:40AM during sick-call Def. Fairchild refused to send Plaintiff to a Hospital to have his broken hand treated. Despite the severity of Plaintiff's injuries and the excruciating pain and migraine headaches Plaintiff suffered as a result of his injuries, Def. Fairchild continue to gave Plaintiff 4 Ibuprofen packages eventhough he had already told her they did not alleviate his pain and Def. Fairchild refused to gave Plaintiff any stronger pain killers. Def. Fairchild gave Plaintiff 3 Applicator Sticks For Stool Test ("3 Applicator Sticks") and told him that "she reschedule him to see the Nurse Practitioner."

182. On May 19, 2012, at approx. 6:25AM during sick-call Plaintiff asked Def. Fairchild for pain medication for the excruciating pain in his hands, face, nose, and for his migraine and Def. Fairchild

told Plaintiff "keep your hand elevated," and she gave him 4 Ibuprofen Packages. Despite the excruciating pain Plaintiff suffered as a result of his injuries Def. Fairchild refused to prescribed any stronger pain killer that would alleviate Plaintiff's pain and to send him to a Hospital to have his broken hand treated properly which cause Plaintiff to endured severe pain throughout the entire day and night from his extensive injuries.

183. On May 20, 2012, at approx. 6:30AM during sick-call Plaintiff asked Def. Fairchild for "3 new stool sticks because C.O. Labarge and Def. Kerfing took the last 3 stool stick she had gave him during a cell search," and she told Plaintiff that "she could not give him anymore stool stick because she did not know if it really happen." Despite the severity of Plaintiff's injuries and the excruciating pain he suffered, Def. Fairchild only gave Plaintiff 4 Ibuprofen Packages and told him to "keep his hand elevated." Def. Fairchild refused to give Plaintiff any stronger pain killer that would help relieve his pain and to send him to a Hospital.

184. On May 21, 2012, during sick-call Defendant Registered Nurse Renee Holmes ("Def. Holmes") told Plaintiff "he did not put in the sick-call," and kept walking past Plaintiff's cell. Plaintiff yelled to her that "he didn't have a pen to write out a sick-call slip." Def. Holmes never treated Plaintiff for his extensive injuries nor did she physical examine him.

185. Later on that day Plaintiff was escorted to 10 building infirmary where he saw a Nurse Practitioner

Who told Plaintiff that "he could not be seen by somebody in medical because that person was not here, he would be place on Ibuprofen 600Mg which he was to take three times a day with food, and he would be schedule to see a Hand Specialist." Plaintiff told the Nurse Practitioner that "his right nostril keep bleeding since he was assaulted," so the Nurse Practitioner examine Plaintiff's nose and told Plaintiff that "you did have trauma to the nose and if the bleeding get worst report it." When Plaintiff asked to be sent to the Hospital the Nurse Practitioner told him "give your fingers some time to heal, rest and elevate your hand".

186. At approx. 7:00PM a Registered Nurse gave Plaintiff the prescribed Ibuprofen 600Mg order by the Nurse Practitioner.

187. On May 22, 2012, at approx. 6:30AM during Sick-call Plaintiff told Def. Fairchild that "he needed to go to to the Hospital to have his fingers reset and to have a tomograms done on his hands, arm, skull, face, and nose," and she told him to "take your medication and your schedule to see a Hand Specialist."

188. On May 23, 2012, at approx. 6:45AM during Sick-call Plaintiff complained to Def. Holmes that the Ibuprofen 600Mg wasn't working for the pain and needed something for the pain, that he needed to be sent to the Hospital to have his fingers set straight, that he needed a Tomograms done, and his nose keep on

-44-

bleeding" and showed her the tissue he had in his nose which had blood on it but she refused to send him to the Hospital, to give him any stronger pain Killer, and to schedule him For a Tomograms. DeF. Holmes told him to "Follow the Nurse Practitioner's instructions on taken the medication and your nose keep bleeding due to Facial trauma so do not blow your nose hard, do not cram tissue in your nose, and allow your nose to heal."

189. On May 24, 2012, at approx 6:35 AM during Sick-call Plaintiff complained to DeF. Fairchild that "the medication was not working For the pain, he needed his Fingers set straight before they heal wrong, and that he wanted a Tomograms done," and she told him to "Follow the Practitioner's instructions, that she could see that the medication was working because the swelling was going down, Keep your hand elevated, and your schedule to see a Hand Specialist. DeF. Fairchild did not give Plaintiff any stronger pain Killer despite the excruiating pain Plaintiff suffered nor did she send him to a Hospital to have his broken Fingers Fix.

190. On May 25, 2012, at approx 6:35 AM during Sick-call Plaintiff complained to DeF. Fairchild that "the medication was not working For the pain, he needed his Fingers set straight, and wanted a Tomograms done," and she told him to "Follow the Practitioner's instruction and that she could see that the medication was working because she saw that the swelling is decreasing." DeF. Fairchild did not give Plaintiff any stronger pain medication for the pain he was

enduring nor did she send him to the Hospital to have his broken Fingers treated.

191. On May 26, 2012, at approx. 6:35AM during Sick-call Plaintiff complained to Def. Holmes that "he needed something for the pain, that his nose keep bleeding, and he needed to go to a Hospital," and she told him "she couldn't give him anything for the pain, to follow the Practitioner's instruction, she couldn't send him to the Hospital, and that she saw the swelling had went down in his whole hand."

192. On May 27, 2012, at approx. 6:35 AM during Sick-call Plaintiff complained to Def. Holmes that "he needed his fingers reset so they won't heal bent," and she told him to "keep your hand elevated, keep taking the medication and follow the Practitioner's instruction, and that he was schedule to see a Hand Specialist."

193. On May 28, 2012, at approx. 6:40 AM during Sick call Plaintiff complained to Registered Nurse John Doe #1 ("RN Doe #1") that "he needed to go to the Hospital and needed something for the pain," and he asked Plaintiff "if he still had Ibuprofen 600Mg in his cell," and when Plaintiff said "Yes!" RN Doe #1 said to Plaintiff "add some Tylenol to it," and gave Plaintiff 4 Non-Aspirin (Acetaminophen 325 Mg) packets.

Exhaustion of Administrative Remedies of Deliberate Indifference to a

Serious Medical Need at Upstate

194. On June 4, 2012, Plaintiff Filed a grievance with the Inmate Grievance Resolution Committee ("IGRC") in regard to the Deliberate Indifference to a Serious Medical Need by Medical Staff at Upstate Corr. Fac. and requesting to be medically single cell until his hand was Fix, that he be handcuff in front because pain would shoot through his arm and hand when his arm and hand hung down, that he be sent to a Hospital to have his Fingers Fix and his nose and head look at cause of the bleeding and migraines, and he given medication that would help with the pain. See Grievance Complaint # UST-49415-12. (Exhibit E).

195. On or about July 16, 2012, Plaintiff learned that his grievance was denied by the Superintendent Def. Rock and he Appeal the Superintendent's decision to CORC on or about July 18, 2012.

196. On or about November 14, 2012, Plaintiff learned that his request in his grievance and Appeal was denied by CORC and that CORC upheld the determination of the Superintendent.

Deliberate Indifference to Serious Medical Need at Upstate,

Coxsackie Correctional Facility, and Clinton Correctional Facility

197. On May 29, 2012, at approx 6:35 AM during Sick-Call

Plaintiff complained to Def. Holmes that "his hand was in excruciating pain, that his nose was bleeding, that he was having excruciating migraine, and he needed to go to the Hospital," and she told him "not to put paper in your nose, do not blow your nose too hard, and keep your Fluid up." Def. Holmes look at both of Plaintiff's hands then gave him 4 Tylenol packages.

198. At approx. 9:50 AM Plaintiff told Def. Eddy that "he needed ESC for the excruciating pain in his hand and the migraine he was having," Def. Eddy then told him that "he would tell the Nurse."

199. Def. Holmes came to Plaintiff's cell and he told her "he was in excruciating pain and Tylenol was not working for the pain and migraine," She looked at both his hands and told him "you are misusing emergency sick call and next time you will get a ticket. The pain in your hand and a migraine is not an emergency."

200. On May 30, 2012, at approx. 6:40 AM during Sick-Call Plaintiff complained to Def. Holmes that "his fingers was numb and he was having migraine," she told him "if you put in another sick-call or call for emergency sick-call she would write him up." She also told Plaintiff to "rest your hand, your schedule for a medical trip, elevate your hand, and I do not see any changes from last time". Def. Holmes did not gave Plaintiff any pain killer after he told her that "the medication she was given him did not help with the pain."

201. On June 4, 2012, Plaintiff was sent to Coxsackie Correctional Facility ("Coxsackie") to see Defendant Ashit Patel ("Def. Patel") an Orthopedic Hand Specialist ("Hand Specialist") for the pain and numbness in his fingers.

202. Def. Patel took 3 x-rays of Plaintiff's left hand then he asked Plaintiff "what happen to your hand?" Plaintiff told him that "he was assaulted by Corrections Officers on May 12, at Upstate."

203. Def. Patel then told Plaintiff that "it's an old injury," then Plaintiff told him that "it's not an old injury, it happen on May 12, 2012, and you should do a Tomography so you can see if any tiny bone structures is broken." After Plaintiff said what he said Def. Patel told Plaintiff "I did not know you was a Doctor and I think you have arthritis," Plaintiff then told him "I don't care what you think, I know I don't have arthritis the CO's broke my fingers."

204. Def. Patel then told the Corrections Officers that "he was done," and left the room and never order the Tomography.

205. Def. Patel in his Hand Specialist Consult dated June 11, 2012, ruled that Plaintiff had "no flexor tendon injury" and "it was likely an old injury, and Plaintiff became argumentative and no follow up requested and recommended Physical Therapy for Plaintiff. Def. Patel never schedule surgery for Plaintiff knowing that delay in repairing Plaintiff's fingers would of lessen his

Chance for recovery.

206. Since seeing Def. Petel, the Plaintiff has submitted repeated sick-call requests requesting stronger pain medication, Surgery, and Tomography.

207. On June 29, 2012, at Clinton Correctional Facility ("Clinton") it was noted left hand swollen, left hand middle finger pip joint swollen and unable to bend and extend and X-ray was ordered by Defendant Doctor Kang Lee ("Def. Lee") but he refused to do a Tomography on Plaintiff and send Plaintiff to a Hospital to be treated.

208. The X-rays was done by Defendant Doctor M. Rehany ("Def. Rehany") who ruled "Soft tissue swelling is noted about the third Pip joint where there is a Flexion deformity present. No evidence for fracture. If there is concern for tendon rupture, correlation with MRI Examination," but he failed to send Plaintiff to a Hospital for Surgery knowing that any more delay in repairing Plaintiff's hand would of lessen his chance for recovery and to order a MRI Examination of Plaintiff's hand when he saw that Plaintiff might had a tendon rupture.

209. Since seeing Def. Rehany, the Plaintiff has submitted repeated sick-call requests requesting stronger pain medication, Surgery, and Tomography.

210. On July 26, 2012, at approx. 1:15 PM Plaintiff had

an interview with Physical Therapist Rohit Kesar but no hand exercise was done.

211. On July 27, 2012, Plaintiff saw Def. Lee who noted swelling in Plaintiff's left middle finger. Plaintiff showed Def. Lee his left pinkie and how it bend into his left ring finger, and Def. Lee told Plaintiff "exercise it and it will get better."

212. Plaintiff asked Def. Lee for "stronger pain medication and to be sent to a hospital for surgery," and Def. Lee told him "you have to wait on Albany decision to approve if you can have surgery."

213. Plaintiff asked Def. Lee for "stronger medication to help with the pain," and Def. Lee told him "you don't need anything other than what we are given you."

214. When Plaintiff asked Def. Lee if "he could have a Tomography done on his hand," Def. Lee told him that "a Computed Tomography ("CT") wouldn't show anything that the x-rays did not pick up."

215. During this meeting with Plaintiff, Def. Lee never had Plaintiff's file in front of him nor did he touch Plaintiff's fingers.

216. On August 2, 2012, Plaintiff saw Def. Lee who told him "nothing is wrong with your fingers, the hand surgeon said

-51-

it is an old injury and he requested no follow-up."

217. On September 4, 2012, Physical Therapist Rohit Kesar ("PT Kesar") discharged Plaintiff from Physical Therapy ("PT") because he said that "therapy could not help Plaintiff at that time, that Plaintiff needed surgery done, and he would put Plaintiff in to see his medical provider so he can schedule Plaintiff to have surgery."

218. On October 3, 2012, Plaintiff saw Def. Lee and Def. Lee told him that "Def. Patel did not want to see him again, there is nothing wrong with your hand, and that Plaintiff did not need any medication because he did not think Plaintiff had any pain."

219. On October 15, 2012, the Plaintiff filed a grievance requesting that he be sent to a Hospital so he could have surgery done on his fingers and hand and that he be given medication other than Ibuprofen and Tylenol for the migraines and the pain in his hand, arm, and fingers.

220. On information and belief, when a Prisoner files a grievance, the grievance staff calls the matter to the attention of those individuals responsible for the matter that the grievance concerns and since the grievance concern medical Plaintiff's grievance was brought to the attention of the medical staff responsible and Defendant Dr. Vonda Johnson ("Def. Johnson").

221. Def. Johnson is responsible for providing treatment

-52-

to the inmates under her care and determining what outside health referrals are needed by the target population.

222. Plaintiff never received a response from Def. Johnson nor did she conduct an examination of Plaintiff or refer him to a new Orthopedic Hand Surgeon. Plaintiff got a response from IGRC but they did not grant him any of the relief he had requested in his grievance.

223. On November 19, 2012, the Plaintiff was seen by Def. Lee and Def. Lee asked him "his name and his problem." Plaintiff told him "his name, that his left hand is broken, he is having migraine, he needed the MRI examination that Def. Rehany was talking about in his report, and he needed surgery." Def. Lee refused to order the MRI examination of the Plaintiff's hand and head or refer Plaintiff to a new Orthopedic Hand Surgeon for surgery. Def. Lee asked Plaintiff "how did it happen" and Plaintiff told him "he was assaulted and beating by Corrections Officers." Def. Lee then told Plaintiff that "his hands and fingers look OK and that he had seen the Hand Surgeon on June 4, 2012, and the Surgeon did not recommend any follow-up."

224. On January 24, 2013, the Plaintiff was seen by Def. Lee and he complained about "his left hand being broken, having migraine, and that he needed surgery." Def. Lee asked him "how did it happen" and when Plaintiff told him "he was assaulted and beating by Corrections Officers," Def. Lee told him "you saw the Hand Surgeon and did not recommend any follow-up, your hand look OK"

Plaintiff was leaving Def. Lee's Office Def. Lee told him "when you change your story on how your injuries happen me and Deputy Brown will send you to an Outside Hospital but until then you are alright."

225. On February 21, 2013, Plaintiff Filed a 'Request For Reasonable Accommodation' with Defendant James E. Proulx ("Def. Proulx"), Deputy Superintendent of Programs Services requesting to have Surgery done on his left hand, put on medication that will work For the excruciating pain in his left hand and For the migraine, and to be placed back on the Physical Therapy call-out again.

226. On March 8, 2013, Plaintiff was seen by Def. Lee who refused to send Plaintiff out to a Hospital For Surgery, order a MRI examination on Plaintiff's hand and CAT scan on Plaintiff's head, put the Plaintiff on stronger medication For his excruciating pain and For the migraine, and refer Physical Therapy For Plaintiff. He instead told Plaintiff that "he already seen the Hand Surgeon and the Hand Surgeon suggested no Follow-up, that he had Physical Therapy already, and used your right hand rather than your left hand." Despite Plaintiff's repeated requests, Def. Lee refused to arrange For Surgery on his hand and Fingers, prescribed stronger pain medication, and to order a MRI, CAT scan, and Tomography OF Plaintiff's hand, Fingers, and head.

227. On April 11, 2013, Plaintiff went on a hunger Strike to get his hand Fixed and For mental health reasons.

228. Since starting his hunger-strike, the Plaintiff told medical staff at Clinton "he was not coming off his hunger-strike until his hand was fixed and he be transferred to a mental health program (BHU)."

229. On May 16, 2013, Plaintiff finally met with Def. Johnson and he told her "he was on a hunger-strike to get his hand fixed and for mental health reasons." Def. Johnson told Plaintiff that "he was not going to get his hand fixed nor was he going to be transferred to a BHU so he might as well come off his hunger-strike." She told Plaintiff that "if he did not come off his hunger-strike she would get a court order to force-feed him."

230. Despite Plaintiff's statement to medical staff and Def. Johnson that "he would come off his hunger-strike if they send him to a Hospital to get his hand fixed and to be sent to a BHU program," Def. Johnson refused to send Plaintiff to a Hospital for surgery on his hand.

231. While on the hunger-strike Plaintiff's weight dropped dramatically from approx. 175 lbs. to approx. 130 lbs, he was hospitalize on three occasion; (1) From April 29th through May 8th after ingesting an overdose of Aspirin and foregan bodies; (2) From May 13th through May 15th for treatment of dehydration; and (3) On May 20th for treatment of dehydration and starvation, endured severe hand and stomach pain, dizziness, and generalized weakness.

232. On July 16, 2013, Defendant Superintendent

Thomas L. LaValley ("Def. LaValley") and Def. Johnson Finally made a deal with Plaintiff to send him to a new Orthopedic Hand Surgeon to have surgery done if he gave up his hunger-strike which he was on for 3 months.

233. Notwithstanding the opinion of P.T. Kesar that Plaintiff needed to see an Orthopedic because Physical Therapy was not helping Plaintiff and his hand showed no significant progress and Plaintiff's repeated requests, Def. Lee and Def. Johnson refused to send Plaintiff to a new Orthopedic Hand Surgeon until Def. Johnson realize Plaintiff was serious about staying on his hunger-strike.

234. On August 5, 2013, Plaintiff received a response from Def. Proulx dated April 5, 2013, stating requesting surgery is not an appropriate issue for Reasonable Accommodation Process.

235. On August 20, 2013, Plaintiff was finally sent to see a new Orthopedic Hand Surgeon Doctor Jeffry Arliss ("Dr. Arliss") for the pain in his left hand, and the weak inefficient left fist, and the prevention of full closure of left hand because of scissoring of left ring finger and left pinkie.

236. Dr. Arliss conducted an examination of Plaintiff's left hand and reviewed the x-rays provided to him by D.O.C.C.S' medical department and determine that Plaintiff's left hand and fingers was broken and recommended surgery on left pinkie metacarpal

-56-

to correct the malrotation of Plaintiff's left pinkie metacarpal.

237. Dr. Arliss could not believe that DOCCS took 14 months to send Plaintiff to a new Orthopedic Hand Surgeon and that they and Def. Patel was saying that Plaintiff's hand was not broken.

238. Dr. Arliss told Plaintiff that "he was going to fixed his pinkie so it would not bend into his ring finger but the broken bones in the pinkie and middle finger had healed wrong so he wasn't sure he could fixed but if Plaintiff was still going through pain after surgery he would do surgery on his pinkie and middle finger."

239. On October 21, 2013, Plaintiff was sent to Kingston Hospital where Dr. Arliss did the surgery on Plaintiff's left pinkie metacarpal.

240. On November 6, 2013, Plaintiff was sent to Sullivan Correctional Facility for a follow-up with Dr. Arliss where removal of dressing and Fastener, Functional assessment, and x-rays took place and a new cast was placed on Plaintiff's hand.

241. On December 11, 2013, Plaintiff was sent to Sullivan Correctional Facility ("Sullivan") for a follow-up with Dr. Arliss where he remove the cast and recommended that Plaintiff be placed in Physical Therapy, given lotions and a ball

-57-

in his cell, and a follow-up with him at Sullivan in January 2014.

242. Despite Plaintiff's repeated requested, Defendants LaValley, Johnson, Lee, Fairchild, Williamson, RN Doe, Baker, Gordon, Rocks and Holmes refused to send Plaintiff to a hospital to have his hand fixed, to placed him on medication that would relieve the pain from his extensive injuries and migraine, and to order a MRI, CAT scan, and/or Tomography of his hand and face.

243. Following the unnecessary beating of Plaintiff 32 months ago, Plaintiff continued to suffer from migraines and physical pain in his left hand. He still can't make a fist with his left hand, making it difficult or impossible to used his hand for basic things.

244. On information and belief, Plaintiff is permanently disable because of the Defendants delay in sending him to a hospital for surgery.

Supervisory Liability For Deliberate Indifference to Medical Care.

245. On May 29, 2012, Plaintiff sent a copy of his grievance to Defendant Carl J. Koenigsmann complaining about the inadequate medical care at Upstate by the medical staff and requesting that all the medical staff involved in the deliberate indifference to his medical care be discipline, properly train and supervise, that he be medically single cell until his hand is fixed,

that he be handcuff in Front because when his hand hung behind his back pain would shoot through his arm and hand, that he be sent to a Hospital to have his Fingers and hand Fixed, his nose and head be look at because of the bleeding and migraines, and stronger medication For the pain be provide to him. Grievance Complaint # UST-49415-12

246. Defendant Carl J. Koenigsmann ("Def. Koenigsmann") is Deputy Commissioner of DOCCS and its Chief Medical Officer. Def. Koenigsmann is responsible for Overseeing the medical staff employed by DOCCS and in Charge of the entire health care operation of DOCCS and prisoners in the custody of DOCCS.

247. On or about June 22, 2012, Plaintiff received a response From Regional Health Services Administrator Rita Grinbergs ("Ms. Grinbergs") on the behalf of Def. Koenigsmann stating that "the Division of Health Services has investigated Plaintiff's concerns with the Health Services staff at Upstate. That she had been advised that the issue to which Plaintiff refer is being addressed as a grievance submitted at your Facility. It is suggested that Plaintiff Continue to bring his medical Concerns to the attention of the health Care staff using the existing Sick call procedure."

248. Def. Koenigsmann did not respond to Plaintiff's letter and never order that Plaintiff be taken to a Hospital to be treated and he never order a MRI and CAT Scan and Tomography of Plaintiff's hand and Face nor did he take any action against the medical staff at Upstate.

249. On October 9, 2012, Plaintiff sent a copy of another grievance to Def. Koenigsman complaining about the inadequate medical care he was receiving at Upstate, Clinton, Downstate Correctional Facility ("Downstate"), and Great Meadow Correctional Facility ("Great Meadow") by the Facilities' medical staff and requesting to be sent to an outside Hospital so surgery could be done on his Fingers and hand and be given medication other then Ibuprofen and Tylenol for the migraines and the pain in his hand, Fingers, and arm. Grievance Complaint # CL-62948-12.

250. Def. Koenigsman never responded to Plaintiff's grievance nor did he grant any relief Plaintiff requested but instead he turned Plaintiff's grievance over to Ms. Grinbergs who claimed that "The Division of Health Services had investigated Plaintiff's concerns with the Health Services Staff at Clinton and that the issue was being addressed as a grievance submitted at Plaintiff's Facility." Ms. Grinbergs did not help Plaintiff with his medical issues.

251. On 3 different Occasion Plaintiff Filed a grievance at his Facility. One (1) grievance was Filed at Upstate (Grievance Complaint # UST-49415-12) on June 4, 2012, and two (2) grievance (Grievance Complaint # CL-62948-12; Grievance Complaint # CL-64367-13) on October 15, 2012, and September 3, 2013, complaining about medical staff at his Facilities deliberate indifference of his Obvious medical Conditions and requesting to be sent to a Hospital for treatment and be giving medication that work for the migraines and pain in

-60-

his hand and that medical staff who showed deliberate indifference to his medical need be train, supervise, and discipline.

252. On information and belief, when a Prisoner Files a grievance about verbal harassment and inadequate medical care, IGRC will Filed a harassment grievance as code 49 harassment/misconduct grievance and be Forwarded to the Superintendent For investigation as of the date it was Filed and IGRC will call a medical grievance to the attention of those individuals responsible For medical care in the Facility.

253. DeF. Rock is responsible For the day-to-day Operations at Upstate and executes its Policies such as New York Correction Law §70(2)(C) which states a "Correctional Facilities will be used with due regard to the health and safety of every person in the custody of the department."

254. DeF. LaValley is responsible For the day-to-day Operations at Clinton and executes its policies such as New York Correction Law §70(2)(C) which states a "Correctional Facilities will be used with due regard to the health and safety of every person in the custody of the department."

255. DeF. Johnson have the sole responsibility For providing treatment to the inmates under her care and have the responsibility of determining what outside health referrals are needed by the target population.

256. DeF. Rock responded to Grievance Complaint # UST-

49415-12, denying any relief to Plaintiff.

257. Def. LaValley responded to Grievance Complaint # CL-62948-12 on November 20, 2012, and to Grievance Complaint # CL-64367-13, denying any relief to Plaintiff.

258. On information and belief, Plaintiff never received a response from Def. Johnson for any of his grievances filed at Clinton about inadequate medical care nor did she interviewed him until May 16, 2013, a year after his hand was broken and she denied to send Plaintiff to a Hospital.

Exhaustion of Administrative Remedies of Deliberate Indifference to a

Serious Medical Need at Upstate, Coxsackie, and Clinton and of

Supervisory Liability for Deliberate Indifference to Medical Care

259. On October 15, 2012, Plaintiff filed a grievance with the IGRC at Clinton in regard to the inadequate medical care he was receiving at the Facilities by the medical staff and requesting to be sent to an outside Hospital so surgery could be done on his fingers and hand and he be given medication other than Ibuprofen and Tylenol for the migraines and the pain in his hand, fingers, and arm. See Grievance Complaint # CL-62948-12. (Exhibit F).

260. On November 6, 2012, Plaintiff learned that his grievance was not going to be granted by IGRC and he appeal the IGRC's

response to Def. LaValley (Superintendent) on or about November 6, 2012.

261. On or about November 29, 2012, Plaintiff received a response from Def. LaValley stating Ibuprofen was appropriate medication for migraines but he did not grant Plaintiff any relief that he asked for in his grievance and the Plaintiff Appeal the Superintendent's decision to CORC on December 11, 2012.

262. On or about April 24, 2013, Plaintiff learned that his request in his grievance and Appeal was denied by CORC and that CORC upheld the determination of the Superintendent.

263. On September 3, 2013, Plaintiff filed a grievance with the IGRC at Clinton in regard to the deliberate indifference of his medical care by Prison Officials, Prison Medical Staff, and Def. Patel and requesting to be given medication for the pain, taken to a Hospital for surgery on his hand, and be placed back into Physical Therapy. and that everybody who refused to treat him for his injuries, refused to schedule him for surgery, and knowingly and willingly wrongfully diagnosed his injuries be train, supervise, and discipline for their deliberate indifference. See. Grievance Complaint # CL-64367-13. (Exhibit G).

264. On or about October 10, 2013, Plaintiff received a response from IGRC stating that the grievant Complaint was received and the medical record reviewed, that Plaintiff was seen by Def. Patel and Def. Patel recommended Hand Therapy and requested no follow-up, that Plaintiff saw Def. Lee on several occasion for continued left hand pain and Def. Lee stated both hands and Fingers look ok, that

Plaintiff saw Def. Johnson and was evaluated by Def. Johnson and an Orthopedic Consult with a hand specialist was requested by Def. Johnson and completed on August 20, 2013, and the Orthopedic Dr recommended a Surgical procedure and it had been schedule in the near future and Plaintiff Appeal the IGRC response to Def. Lavalley on or about October 10, 2013.

265. On or about November 14, 2013, Plaintiff received a response from Def. LaValley stating the grievance was reviewed, the grievant was ordered and received appropriate consultations to a specialist, the specialist recommended no follow up; however, due to continued issues with the hand, he was again referred to and treated by a specialist and Appeal the decision of the Def. LaValley to CORC on December 9, 2013.

266. On or about April 4, 2014, Plaintiff learned that his request in his grievance and Appeal was denied by CORC and that CORC upheld the determination of the Superintendent.

Exhaustion of Administrative Remedies

267. The Plaintiff has exhausted his administrative remedies with respect to all Claims and all defendants.

VII. Claims For Relief ("Counts")

COUNT #1: EXCESSIVE USE OF FORCE ON FEB. 3, 2012

268. The actions of Defendants Ramsdell, Arquitt, Fournier,

Mitchell, Willett, Larocque, and Keating in using excessive physical force against the Plaintiff who was mechanical restraints (handcuff to a waist chain) and unable to defend himself, did not resist the Defendants, did not threaten the Defendants, nor break any prison rules by kicking, punching, and standing on Plaintiff without need or provocation, were done maliciously and sadistically for the purpose of causing Plaintiff serious bodily harm and constituted Cruel and Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

269. As a result of the malicious and sadistic used of excessive physical force exercised by Defendants Ramsdell, Arquitt, Mitchell, Fournier, Willett, Larocque, and Keating, Plaintiff suffered serious injuries at the hands and feet of these Defendants. Plaintiff sustained multiple physical injuries, including an abrasion and swelling the size of a gumball and redness around the outer corner of right eye, a superficial laceration in the middle of his bottom lip, a 1/4" curved superficial laceration on right wrist, a 2" superficial abrasion on left forearm, a 1/4" scratch on left bicep, moderate amount of swelling and pinkness on the left side of the head, and 2 small pin-point red areas on top of right foot, as well as lower back pain, pain in right foot, and excruciating headaches. Plaintiff also suffered extreme emotional distress from the incident.

COUNT #2: BREACH OF DUTY TO INTERCEDE ON BEHALF OF
PLAINTIFF ON FEB. 3, 2012

270. Defendants Fournier, Mitchell, Willett, Larocque, Keating, and Eddy exercised deliberate indifference to a substantial risk of serious harm to Plaintiff by failing to intercede on behalf of Plaintiff when they witness Defendants Ramsdell and Arquitt maliciously and sadistically beating a defenseless Plaintiff who was handcuff to a waist chain and face down on the ground which constituted deliberate indifference to a substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment of the United States Constitution.

271. Defendant Eddy exercised deliberate indifference to a substantial risk of serious harm to Plaintiff even further when he failed to intercede on behalf of Plaintiff when he witness Defendants Fournier, Mitchell, Willett, Larocque, and Keating joined Defendants Ramsdell and Arquitt in maliciously and sadistically beating the defenseless Plaintiff who was handcuff to a waist chain and face down on the ground which constituted deliberate indifference to a substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment of the United States Constitution.

272. As a result of the deliberate indifference exercised by the Defendants Fournier, Mitchell, Willett, Larocque, Keating, and Eddy, Plaintiff suffered serious harm at the hands of Defendants Ramsdell, Arquitt, Fournier, Mitchell, Willett, Larocque, and Keating. Plaintiff sustained

Multiple physical injuries and suffered extreme emotional distress from the incident. (see paragraph 269 for the injuries).

## COUNT #3: EXCESSIVE USE OF FORCE ON MAY 12, 2012

273. The actions of Defendant Hebert in using excessive force against Plaintiff by spraying chemical agent (587 Aerosol) into the Plaintiff's cell when Plaintiff have a history of asthma and heart murmur and posed no imminent threats of injury to Prisoners, staff, himself, or/and any property, nor did he possess or pretend to possess, any kind of weapon or contraband, were done maliciously and sadistically for the purpose of causing Plaintiff serious harm and constitued Cruel and Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

274. The action of Defendant Hebert in using excessive force against Plaintiff by spraying chemical agent (587 Aerosol) into the Plaintiff's face when he was on the ground being restraint and unnecessary beat by Defendents Fournier and Ripa and not resisting the Defendants, were done maliciously and sadistically for the purpose of causing Plaintiff serious harm and constitued Cruel and Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

275. As a result of the malicious and sadistic used of excessive force exercised by Defendants Hebert, Plaintiff suffered serious injuries at the hands of Defendant Hebert. Plaintiff sustained injuries such as dizziness and shortness of

breath. Plaintiff also suffered extreme emotional distress and extreme mental anguish from the incident.

276. The actions of Defendants Fournier, and Ripa in using excessive physical force against the Plaintiff who did not resist the Defendants, did not the threaten the Defendants, did not posed an imminent threats of injury to himself, other prisoners, staff, or/and any property, nor did he possess or pretend to possess, any kind of weapon or contraband by punching Plaintiff in the face multiple time, slamming Plaintiff onto the ground, slamming Plaintiff's forehead against the floor and wall multiple time, stomping on Plaintiff's left hand, pinching Plaintiff, and pulling down on the already tight hand cuffs without need or provocation, were done maliciously and sadistically for the purpose of causing Plaintiff serious bodily harm and constituted Cruel and Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

277. As a result of the malicious and sadistic used of excessive physical force exercised by Defendants Fournier and Ripa, Plaintiff suffered serious injuries at the hands of these Defendants. Plaintiff sustained multiple physical injuries, including left eye swelling and bruised area, left cheek with abrasions, upper lip swollen, nose bleeding, right eye swollen and bruised, laceration to right eyebrow approx. 1"x1" appears like a T, entire face swollen, blood in both eyes, and bruises covering entire face, as well as pain in both hands and face, hairline fracture, and trauma to the head, face, and nose, and excruciating migraine. Plaintiff also suffered extreme emotional distress from the incident and extreme mental anguish from the incident.

278. The action of Defendant Fournier in sexual assaulting the Plaintiff by: putting a finger in Plaintiff's anus, was done maliciously and sadistically for the purpose of causing Plaintiff serious bodily harm and intented to humiliate Plaintiff and constituted Cruel and Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

279. As a result of the malicious and sadistic sexual assault exercised by Defendant Fournier, Plaintiff suffered serious injury at the hands of the Defendant. Plaintiff suffered bleeding from the anus and pain from the anus. Plaintiff also suffered extreme emotional distress and extreme mental anguish from the incident.

280. The action of Defendant Lamare in using excessive force against the Plaintiff by placing the hand restraints (hand cuffs) on Plaintiff too tightly without need or provocation, were done maliciously and sadistically for the purpose of causing Plaintiff serious bodily harm and constituted Cruel and Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

281. As a result of the malicious and sadistic used of excessive force exercised by Defendant Lamare, Plaintiff suffered serious injuries at the hands of the Defendant. Plaintiff sustained permanent scarring, numbness in his wrists and hands, as well as excruciating pain in both wrists. Plaintiff also suffered extreme emotional distress and extreme mental anguish from the incident.

282. The action of Defendant Pipe in sexual assaulting the Plaintiff

- 69 -

by grabbing and squeezing the Plaintiff's penis and scrotum, was done maliciously and sadistically for the purpose of causing Plaintiff serious pain and intented to humiliate Plaintiff and constituted Cruel and Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

283. As a result of the malicious and sadistic sexual assault exercised by Defendant Ripa, Plaintiff suffered pain at the hands of the Defendant. Plaintiff also suffered extreme emotional distress and extreme mental anguish from the incident.

284. The actions of Defendant Ripa in using excessive physical force against the Plaintiff who was mechanical restraints, unable to defend himself, and not resisting by bending and twisting Plaintiff's fingers on his left hand and left hand and left wrists without need or provocation, were done maliciously and sadistically for the purpose of causing Plaintiff serious bodily and permanent harm and constituted Cruel and Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

285. As a result of the malicious and sadistic used of excessive physical force exercised by Defendant Ripa, Plaintiff suffered serious and permanent injuries att the hands of the Defendant. Plaintiff sustained multiple physical injuries, including a broken middle finger (left) and a broken left pinkie, as well as excruciating pain in left hand and left arm and can not make a fist with left hand. Plaintiff also suffered extreme emotional distress and extreme mental anguish from the incident.

286. The actions of Defendant Fournier in using excessive physical force against the Plaintiff who was not resisting by bending and twisting Plaintiff's right fingers and right wrist without need or provocation, were done maliciously and sadistically for the purpose of causing Plaintiff severe pain and constituted Cruel and Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

287. As a result of the malicious and sadistic used of excessive physical force exercised by Defendant Fournier, Plaintiff suffered excruciating pain in his right hand, fingers, and arm. Plaintiff also suffered extreme emotional distress and extreme mental anguish from the incident.

## COUNT #4: BREACH OF DUTY TO INTERCEDE ON BEHALF OF PLAINTIFF ON MAY 12, 2012

288. Defendants Lamare, Hebert, Spinner, Bickford, Palmer, Greene, Willett, Travers, and Williamson exercised deliberate indifference to a substantial risk of serious harm to Plaintiff by failing to intercede on behalf of Plaintiff when they witness Defendants Fournier and Ripa maliciously and sadistically beating Plaintiff and/or heard Plaintiff screaming in pain while Defendants Fournier and Ripa maliciously and sadistically beat him which constituted deliberate indifference to a substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment of the United States Constitution.

289. As a result of the deliberate indifference exercised by Defendants Lamare, Hebert, Spinner, Bickford, Palmer, Greene, Willett, Travers, and Williamson, Plaintiff suffered serious bodily harm, permanent scarring

and harm, excruciating pain, extreme emotional distress, and extreme mental anguish from the incident (See paragraphs 275, 277, 279, 281, 283, 285, and 287 for the injuries).

COUNT # 5: SUPERVISORY LIABILITY FOR DELIBERATE INDIFFERENCE TO EXCESSIVE USE OF FORCE

290. Defendant Rock exercised deliberate indifference to the Plaintiff's and other Prisoners' safety by failing to take disciplinary action and/or other action to curb the known pattern and history of physical abuse and used of excessive force on Prisoners such as Plaintiff by Defendants Ramsdell, Arquitt, Fournier, Mitchell, Willett, Larocque, Keating, Eddy, and other Corrections Officers, even though he had knowledge of the substantial risk of serious harm to Plaintiff and other Prisoners, and his failure to act on the numerous complaints filed with his office by IGRC from Plaintiff and other Prisoners about the excessive use of force exercised by Defendants Ramsdell, Arquitt, Fournier, Mitchell, Willett, Larocque, Keating, Eddy, and other Corrections Officers constituted deliberate indifference to the Plaintiff's and other Prisoners safety, and contributed to and proximately caused the used of excessive force on Feb. 3, 2012, and Plaintiff's injuries in which violates the Eighth Amendment of the United States Constitution.

291. Defendant Rock exercised deliberate indifference to the Plaintiff's and other Prisoners' safety by failing to take disciplinary action and/or other action to curb the known pattern and history of excessive

Force on Prisoners as well as Plaintiff at Upstate during cell extraction by Defendants Hebert, Fournier, Ripa, Lamare, and Other Corrections Officers when he had knowledge of the excessive use of force and the substantial risk of serious harm to the Plaintiff as well as other Prisoners. Defendant Rock's failure to act on the numerous letters, complaints, lawsuits, and grievances filed with and against his offices by Plaintiff as well as other Prisoners about the excessive force exercised by Defendants Hebert, Fournier, Ripa, Lamare, and Other Corrections Officers constituted deliberate indifference to the Plaintiff's as well as Other Prisoners' health and safety, and his failure to act contributed to and proximately caused the used of excessive force and Plaintiff's injuries on May 12, 2012, in which violates the Eighth Amendment of the United States Constitution.

292. As a result of Defendant Rock's failure, Plaintiff was viciously beating by Corrections Officers and received serious physical injuries, extreme emotional distress, and extreme mental anguish on February 3, 2012, and May 12, 2012.

## COUNT #6: LIABILITY FOR DELIBERATE INDIFFERENCE TO MEDICAL CARE BY SUPERVISORS

293. Defendant Koenigsmann exercised deliberate indifference to substantial risk of serious harm to Plaintiff by failing to have Plaintiff sent to a Hospital to have his left pinkie and left middle finger set straight, have MRI, Tomography, and CAT scan done on Plaintiff hand, nose, and head, and to provide Plaintiff continuous and effective pain-relieving medication for Plaintiff's severe pain and

migraines and to act to prevent the deliberate indifference to Plaintiff's medical need. Defendant Koenigsman intentionally and knowingly failed in his legal duty to Plaintiff "to provide effective medical care," enunciated by New York State Correction Laws and DOCCS' Health Services Policy and to act to prevent further medical violations. Defendant Koenigsman on three different occasions was notified by Plaintiff (2 complaints sent directly to him and 1 complaint filed with IGRC) but never responded to Plaintiff. Instead, Defendant Koenigsman handed two of Plaintiff's complaints to Ms. Grinbergs who did responses. (See Paragraph 247 and 250 for Ms. Grinbergs' Responses).

294. The failure of Defendant Koenigsman to take step to ensure that Plaintiff received the needed treatment to a favorable outcome and to prevent further medical violations to Plaintiff's medical care, despite his knowledge of Plaintiff's serious medical needs, constituted Deliberate Indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment of the United States Constitution.

295. As a result of Defendant Koenigsmann's failure to provide needed medical treatment and to prevent the medical violations, Plaintiff suffered further injury, physical and emotional pain, and mental anguish. Plaintiff continued to suffer from migraines and severe pain throughout his left hand and left arm, and Defendant Koenigsmann fails to have the medical staff provide adequate pain medication for Plaintiff. In addition, Plaintiff was and still can't make a fist, lift heavy objects, and exercise after not being timely treated,

because the untreated broken bones in his fingers did not properly heal.

296. Defendant Rock exercised deliberate indifference to substantial risk of serious harm to Plaintiff by failing to act to prevent the deliberate indifference to Plaintiff's medical needs. Defendant Rock intentionally and knowingly failed in his legal duty to Plaintiff to make sure his "Correctional Facility was used with due regard to the health and safety of every person in the custody of the department," enunciated by New York State Correction Law§ 70(2)(C), by failing to prevent any further medical violations to Plaintiff's medical needs and order that his medical staff send Plaintiff to a Hospital to be treated for his broken hand and migraines and bleeding nose. Defendant Rock was notified about Plaintiff's medical issues on two different occasions May 22, 2012, (see Grievance Complaint #UST-49338-12) and June 4, 2012, (see Grievance Complaint #UST-49415-12) but he denied to grant any of Plaintiff's relief.

297. The failure of Defendant Rock to take step to ensure that Plaintiff received the needed treatment to a favorable outcome and to prevent further medical violations to Plaintiff's medical need, despite his knowledge of Plaintiff's serious medical needs and the outcome if Plaintiff did not get the treatment need, constituted Deliberate Indifference to Plaintiff's serious medical needs and the substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment of the United States Constitution.

298. As a result of Defendant Bock's failue to have "reasonable and adequate medical care" provided to Plaintiff and to prevent the medical violations, Plaintiff suffered further injury, physical and emotional pain, and mental anguish. Plaintiff continued to suffer from migraines and severe pain throughout his left hand and left arm and Defendant Bock failed to have his medical staff provide adequate and effective pain-relieving medication for Plaintiff's severe pain and migraines. In addition, Plaintiff still can't make a fist with his left hand, lift heavy objects with his left hand, and exercise because his broken hand was not treated in a timely manner and the broken bones did not properly heal.

299. Defendant LaValley exercised deliberate indifference to substantial risk of serious harm to Plaintiff and to Plaintiff's serious medical needs by failing to act to prevent the deliberate indifference to Plaintiff's medical needs and have reasonable and adequate medical care provided to Plaintiff. Defendant LaValley intentionally and knowingly failed in his legal duty to Plaintiff to make sure that his "Correctional Facility was used with due regard to the health and safety of every person in the custody of the department," enunciated by New York State Correction Law § 70(2)(C) by failing to prevent any further medical violations to Plaintiff's medical needs and to order that his medical staff send Plaintiff to a hospital to be treated for a broken hand and migraines. Defendant LaValley was notified about Plaintiff's medical issues on several occasions (1) On or about November 7, 2012, (See. Grievance Complaint # CL-62948-12), (2) When Plaintiff started his hunger strike in April, 2013, and (3) On or about October 10, 2013,

(See Grievance Complaint# CL-64367-13) but he did not grant any of Plaintiff's relief.

300. The failure of Defendant LaValley to take steps to ensure that Plaintiff received the needed treatment to a favorable outcome and to prevent further medical violations to Plaintiff's medical need, despite his knowledge of Plaintiff's serious medical needs and the outcome if Plaintiff did not get the needed treatment, constituted Deliberate Indifference to Plaintiff's serious medical needs and the substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment of the United States Constitution.

301. As a result of Defendant LaValley's failure to have "reasonable and adequate medical care," provided to Plaintiff and to prevent further medical violations, Plaintiff suffered further injury, physical and emotional pain, and mental anguish. Plaintiff continued to suffer from migraines and severe pain throughout his left hand and left arm and Defendant LaValley had failed to have his medical staff provide adequate and effective pain-relieving medication for Plaintiff's severe pain and migraines. In addition, Plaintiff still can't make a fist with his left hand, lift heavy objects with his left hand, and exercise because his broken hand was not treated in a timely manner and the broken bones did not properly heal.

302. Defendant Johnson exercised deliberate indifference to substantial risk of serious harm to Plaintiff and to Plaintiff's serious medical needs by failing to prevent the deliberate indifference to Plaintiff's medical needs and to have reasonable and adequate

medical care provided to Plaintiff. Defendant Johnson intentionally and knowingly failed in her legal duty to Plaintiff to make sure he was provided with "reasonably adequate medical care" by failing to have him sent to a Hospital to have his broken hand and migraines treated, to order a MRI, CAT scan, and a Tomography of Plaintiff's hand, head, and face, and to provide him with adequate and effective pain-relieving medication for Plaintiff's severe pain and migraines. Defendant Johnson was notified about Plaintiff's medical issues on several occasions (1) When Plaintiff started his hunger strike in April, 2013, (2) When she interviewed Plaintiff on May 16, 2013, and (3) On information and belief when Plaintiff filed grievances (Grievance Complaint #CL-62948-12 and Grievance Complaint #CL-64367-13) but she still refused to sent Plaintiff to a Hospital and grant Plaintiff's relief until July 16, 2013. and did not respond to Plaintiff's grievances.

303. The Failure of Defendant Johnson to send the Plaintiff to a Hospital so he could received the needed treatment to his broken hand, to have a MRI, CAT scan, and a Tomography done on his hand, head, and face, to provide Plaintiff with adequate and effective pain-relieving medication for Plaintiff's severe pain and migraines, and to prevent any further medical violations to Plaintiff's medical needs, despite her knowledge of Plaintiff's serious medical needs and the outcome if Plaintiff did not get the needed treatment, constituted Deliberate Indifference to Plaintiff's serious medical needs and to the substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment of the United States Constitution.

304. As a result of Defendant Johnson's failure to

Send Plaintiff to a Hospital so reasonable and adequate medical care could be provided to Plaintiff and to prevent Defendant Lee from further violating Plaintiff's medical rights, Plaintiff suffered further injury, physical and emotional pain, and mental anguish. Plaintiff continued to suffer from migraines and severe pain throughout his left hand and left arm and Defendant Johnson failed to have her medical staff provide adequate and effective pain-relieving medication for Plaintiff's severe pain and migraines or provide it to Plaintiff herself. In addition, Plaintiff still can't make a fist with his left hand, lift heavy objects with his left hand, and exercise because his broken hand was not treated in a timely manner and the broken bones did not properly heal.

305. The inaction of Defendants Koenigsmann, Rock, LaValley, and Johnson to take the necessary steps to prevent any further medical violation by Defendants Travers, Fairchild, Williamson, RN Doe, Cook, Baker, Gordon, Holmes, Brownan, Rehman, and Patel to Plaintiff's medical needs and to enforce their duty to Plaintiff to send him to a Hospital for surgery on his broken hand and to have a MRI, a CAT scan, and a Tomography on Plaintiff's hand, face, and head, and to provide him with effective pain-relieving medication for his severe pain and migraines, denied Plaintiff access to timely medical care for a broken hand and migraines and cause Plaintiff's hand to heal wrong and fingers deformed and cause Plaintiff to endured further pain physical and emotional, and mental anguish.

COUNT #7: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS (CARE)

306. The failure of Defendant Travers to properly

conduct a physical examination of Plaintiff's hand, other injuries, and other complaints, (2) to document all Plaintiff's injuries and other complaints, (3) to provide Plaintiff with any effective pain-relieving medication, (4) to send Plaintiff to a Hospital to have surgery done on his broken hand and to have an examination done on his face injuries and head injuries, (5) to order a MRI, a CAT scan, and a Tomography of Plaintiff's hand, face, and head, (6) to properly treat Plaintiff's injuries, and (7) to refer Plaintiff to a Specialist for his broken hand, face injuries, and migraines, were done knowingly and intentionally to cover-up the severity of Plaintiff's injuries sustain during the used of excessive force by Corrections Officers in the cell extraction, and constituted Deliberate Indifference to the Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

307. The failure of Defendant Williamson to properly conduct a physical examination of the Plaintiff's hand, other injuries and other complaints, (2) to document all the Plaintiff's injuries and other complaints, (3) to properly treat the Plaintiff's injuries, (4) to send the Plaintiff to a Hospital to have surgery done on his broken hand and to have an examination done on his face injuries and head injuries, (5) to order a MRI, a CAT scan, and a Tomography of the Plaintiff's hand, face, and head, (6) to provide the Plaintiff with any effective pain-relieving medication, and (7) to refer the Plaintiff to a Specialist for his broken hand, face injuries, and migraines, were done knowingly and intentionally to cover-up the severity of Plaintiff's injuries sustain during the used of excessive force by Corrections Officers in the cell extraction and constituted

Deliberate Indifference to the Plaintiff's Serious Medical needs in violation of the Eighth Amendment to the United States Constitution.

308. The Failure of Defendant RN Doe (1) to conduct a physical examination of the Plaintiff's hand, other injuries, and other complaints, (2) to provide the Plaintiff with any effective pain-relieving medication, (3) to treat Plaintiff's injuries, (4) to send the Plaintiff to a Hospital to have surgery done on his broken hand and to have an examination done on his face injuries and head injuries, and (5) to order a MRI, a CAT scan, and a Tomography of the Plaintiff's hand, face, and head, and (6) to refer the Plaintiff to a Specialist for his broken hand, face injuries, and migraines, were done knowingly and intentionally and constituted Deliberate Indifference to the Plaintiff's Serious Medical Needs in violation of the Eighth Amendment to the United States Constitution.

309. The Failure of Defendant COOK (1) to treat the Plaintiff's injuries, (2) to conduct a physical examination of the Plaintiff's hand, other injuries, and other complaints, and (3) to provide the Plaintiff with any effective pain-relieving medication, were done maliciously, sadistically, knowingly, and intentionally and constituted Deliberate Indifference to the Plaintiff's Serious Medical Needs in violation of the Eighth Amendment to the United States Constitution.

310. The Failure of Defendant Baker (1) to treat the Plaintiff's injuries, (2) to conduct a physical examination of the Plaintiff's broken hand, other injuries, and other complaints, (3) to provide

the Plaintiff with any effective pain-relieving medication and medication to clean his bruises and cuts, and (4) to send the Plaintiff to a Hospital to have surgery done on his broken hand and to have an examination done on his Face injuries and head injuries, were done knowingly and intentionally and constituted Deliberate Indifference to the Plaintiff's Serious Medical Needs in violation of the Eighth Amendment to the United States Constitution.

311. The Failure of Defendant Gordon (1) to send the Plaintiff to a Hospital to have surgery done on his broken hand and to have an examination done on his Face injuries and head injuries, (2) to treat the Plaintiff's injuries, (3) to conduct a physical examination of the Plaintiff's broken hand, other injuries, and other complaints, and (4) to provide the Plaintiff with any effective pain-relieving medication, were done knowingly and intentionally and constituted Deliberate Indifference to the Plaintiff's Serious Medical Needs in violation of the Eighth Amendment to the United States Constitution.

312. The repeated refusal and failure of Defendant Fairchild (1) to send the Plaintiff to a Hospital to have surgery done on his broken hand and to have an examination done on his Face injuries and head injuries, (2) to provide the Plaintiff with effective pain-relieving medication, (3) to properly treat the Plaintiff's injuries, (4) to order a MRI, a CAT scan, and a Tomography of the Plaintiff's broken hand, facial injuries, and head injuries, (5) to conduct a physical examination of the Plaintiff's broken hand, other injuries, and other complaints, and (6) to refer the Plaintiff to a Specialist for his

broken hand, Facial injuries, and head injuries, were done knowingly and intentionally and constituted Deliberate Indifference to the Plaintiff's Serious Medical Needs in violation of the Eighth Amendment to the United States Constitution.

313. The repeated refusal and Failure of Defendant Holmes (1) to send the Plaintiff to a Hospital to have surgery done on his broken hand and to have an examination done on his Facial injuries and head injuries, (2) to provide the Plaintiff with effective pain-relieving medication, (3) to properly treat the Plaintiff's injuries, (4) to order a MRI, a CAT scan, and a Tomography of the Plaintiff's broken hand, Facial injuries, and head injuries, (5) to conduct a physical examination of the Plaintiff's broken hand, other injuries, and other complaints, and (6) to refer the Plaintiff to a Specialist for his broken hand, Facial injuries, and head injuries, were done knowingly and intentionally and constituted Deliberate Indifference to the Plaintiff's Serious Medical Needs in violation of the Eighth Amendment to the United States Constitution.

314. Defendants Travers, Williamson, RN Doe, Cook, Baker, Gordon, Fairchild, and Holmes exercised deliberate indifference to the Plaintiff's Serious Medical Needs when they knew about Plaintiff's broken hand, Facial injuries, and migraine and that the medication was not working For Plaintiff's pain and migraine but Failed to provide Plaintiff with timely and adequate medical care, and denied and delayed in obtaining specialized medical treatment For Plaintiff's broken hand, Facial injuries, and migraine when it was clear Plaintiff's broken hand, Facial injuries, and migraine was not getting better despite their efforts on his behalf, in which caused Plaintiff Substantial harm,

315. As a result of Defendants Travers', Williamson's, RN Doe's, Cook's, Baker's, Gordon's, Fairchild's, and Holmes' failure to provide timely, adequate, and needed medical treatment, Plaintiff suffered further physical pain and injuries, emotional pain, and mental anguish. Plaintiff continued to suffer from migraine and severe pain throughout his left hand and left arm. In addition, Plaintiff is unable to make a fist with his left hand, he have loss of range of some motion in his left middle finger and left pinkie, and he also may have a possible permanent deform left middle finger and left pinkie after the above-mentioned Defendants aware of Plaintiff's injuries and complaints and decided to ignored the serious of the injuries and the substantial risk and also after the interference, denial, and delay of the timely, adequate, and needed medical treatment to Plaintiff's injuries and complaints by above-mentioned Defendants because the broken bones in his left pinkie and left middle finger was not reset and did not heal properly.

316. The action of Defendant Browman to falsified the x-rays results and incorrectly diagnosis the Plaintiff's injuries, interfered, denied, and delayed Plaintiff the access to timely, adequate, needed specialized medical treatment for his broken left hand, facial injuries, and migraine, which were done maliciously, sadistically, knowingly, and intentionally to cover-up the severity of the Plaintiff's injuries and the used of excessive force by the Corrections Officers in the cell extraction and constituted Deliberate Indifference to the Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

317. The failure of Defendant Browman to order another

Frontal view x-ray of Plaintiff's nasal bones when the original frontal view x-ray was marred by motion artifact and could not properly diagnose the Plaintiff's nose injuries, were done knowingly and intentionally and constituted Deliberate Indifference to the Plaintiff's Serious Medical Needs in violation of the Eighth Amendment to the United States Constitution.

318. Defendant Browman exercised deliberate indifference to the Plaintiff's Serious Medical Needs when he intentionally falsified the x-rays results and did not order another frontal view x-ray of Plaintiff's nasal bones to make a properly diagnose, which denied and delayed the Plaintiff access to timely, adequate, and needed specialized medical treatment for his broken left hand, facial injuries, and migraine, despite his knowledge of the substantial risk of serious harm to the Plaintiff's health if the Plaintiff did not get immediate, adequate, and needed medical treatment for his injuries, and complaints.

319. As a result of the deliberate indifference exercised by Defendant Browman, the Plaintiff suffered further physical pain and injuries, emotional pain, and mental anguish. Plaintiff continued to suffer from migraine and severe pain throughout his left hand and left arm. In addition, Plaintiff is unable to make a fist with his left hand, he have loss of range of some motion in his left middle finger and left pinkie, and he also may have a possible permanent deform left middle finger and left pinkie after the interference, denial, and the delay of the timely, adequate, and needed medical treatment to the Plaintiff's injuries and complaints by Defendant Browman's action.

to Falsified the x-rays results and Failure to order another Frontal View x-ray because the broken bones in Plaintiff's left pinkie and left middle Finger was not reset and did not heal properly.

320. Defendant Patel exercised deliberate indifference to Plaintiff's health by Failing to provide timely, adequate, and needed medical care to Plaintiff's broken left hand. Defendant Patel intentionally did not perform surgery on Plaintiff's broken left hand and intentionally refused to conduct an adequate examination of Plaintiff's broken left hand even after Plaintiff requested that Defendant Patel do a Tomography of his broken left hand. Instead, Defendant Patel told Plaintiff that his injury was an old injury and that he thought Plaintiff made had arthritis. Despite Defendant Patel knowledge of Plaintiff's serious medical need and the substantial risk of serious harm to the Plaintiff's health if the Plaintiff did not get the needed surgery on his broken left hand Defendant Patel still denied to treat the Plaintiff's left hand. and Constituted Deliberate Indifference to the Plaintiff's serious Medical Needs in violation of the Eighth Amendment to the United States Constitution.

321. As a result of the deliberate indifference exercised by Defendant Patel, the Plaintiff suffered Further physical pain and injuries, emotional pain, and mental anguish. Plaintiff continued to suffer severe pain throughout his left hand and left arm. In addition, Plaintiff is unable to make a Fist with his left hand, have loss of range of some motion in his left middle finger and left pinkie, and also may have a possible permanent deform left middle finger and left pinkie after the denial of the adequate and needed medical treatment From Defendant Patel; because the broken bones in Plaintiff's left pinkie and left middle finger

was not reset and did not heal properly.

322. Defendant Lee exercised deliberate indifference to Plaintiff's health by failing to provide timely, adequate, and needed medical care to Plaintiff's broken left hand and migraine. Defendant Lee repeatedly and intentionally refused to fulfill Plaintiff's requests to send him to a Hospital for surgery on his broken left hand, to order a Tomography and a MRI of Plaintiff's broken left hand, to order a MRI of Plaintiff's head because of the migraines, and prescribe stronger pain medication to Plaintiff for the pain in his hand and migraines. Defendant Lee knew of Plaintiff's broken left hand by his examination and diagnosis and by the X-rays results and diagnosis by Defendant Rehzau but refused to request another Orthopedic consultation and/or send Plaintiff to a Hospital for surgery on his broken left hand and prescribe stronger pain medication for the pain. Instead, Defendant Lee told Plaintiff that he would have to change the story on how his injuries happen and then Defendant Lee and Deputy Brown would send Plaintiff to an outside Hospital and also told Plaintiff that Hand Surgeon suggested no follow-up. Despite Defendant Lee knowledge of Plaintiff's serious medical need and the substantial risk of the serious harm to the Plaintiff's health if the Plaintiff did not get the needed surgery on his broken left hand Defendant Lee still denied to treat the Plaintiff's left hand and migraine and denied and delayed Plaintiff access to needed treatment, constituted Deliberate Indifference to the Plaintiff's serious Medical needs in violation of the Eighth Amendment to the United States Constitution.

323. As a result of the deliberate indifference exercised by

Defendant Lee, the Plaintiff suffered further physical pain and injuries, emotional pain, and mental anguish. Plaintiff continued to suffer from migraines and severe pain throughout his left hand and left arm. In addition, Plaintiff is unable to make a fist with his left hand, have loss of range of some motion in his left middle finger and left pinkie, and also may have a possible permanent deform left middle finger and left pinkie after the denial and the delay of adequate, effective, timely, and needed medical treatment from Defendant Lee, because the broken bones in the Plaintiff's left pinkie and left middle finger was not reset and did not heal properly.

324.  Defendant Rehany exercised deliberate indifference to the Plaintiff's serious medical needs and health in violation of the Eighth Amendment to the United States Constitution by failing to timely refer the Plaintiff to adequate, effective, and needed medical care to the Plaintiff's broken left hand. Defendant Rehany knew of the severity of the injuries to the Plaintiff's left hand by his X-ray results and diagnosis but he intentionally did not refer the Plaintiff to an Orthopedic or send the Plaintiff to a Hospital for surgery on the Plaintiff's broken left hand and did not order a MRI examination concerning the possible tendon rupture in the Plaintiff's left hand, despite his knowledge of the substantial risk of serious harm to Plaintiff's health if he did not get immediate surgery on his injured left hand.

325. As a result of the deliberate indifference exercised by Defendant Rehany, the Plaintiff suffered further physical pain and injuries, emotional pain, and mental anguish. Plaintiff continued to suffer from

Severe pain throughout his left hand and left arm. In addition, Plaintiff is unable to make a fist with his left hand, have loss of range of some motion in his left middle finger and left pinkie, and also may have a possible permanent deform left middle finger and left pinkie after the failure to refer Plaintiff for surgery on his left hand by Defendant Rehzau, because the broken bones in Plaintiff's left pinkie and left middle finger was not reset and did not heal properly.

326. Defendant Johnson exercised deliberate indifference to Plaintiff's serious medical needs and health in violation of the Eighth Amendment to the United States Constitution by failing to provide timely, adequate, effective, and needed medical care to Plaintiff's broken left hand and migraines. Defendant Johnson knew of the injuries to Plaintiff's left hand through Plaintiff's grievances and interview of Plaintiff on why he was on a hunger-strike but intentionally did not refer Plaintiff to an Orthopedic or send Plaintiff to a Hospital for surgery on his left hand, prescribe stronger and effective pain medication for Plaintiff's migraines and the pain in Plaintiff's left hand and left arm, and order a MRI Examination, Cat Scan, and/or Tomography of Plaintiff's hand, face and head, despite her knowledge of the substantial risk of serious harm to Plaintiff's health if he did not get immediate surgery on his injuried left hand and effective pain medication for the pain and migraines Plaintiff suffered.

327. As a result of the deliberate indifference exercised by Defendant Johnson, the Plaintiff suffered further physical pain and injuries, emotional pain, and mental anguish. Plaintiff continued to suffer from migraines and severe pain throughout his left hand and left arm. In addition,

Plaintiff is unable to make a Fist with his left hand, have loss of range of some motion in his left middle finger and left pinkie, and also may have a possible permanent deform left middle finger and left pinkie after the denial and delay of adequate, effective, and needed medical treatment by Defendant Johnson, because the broken bones in Plaintiff's left pinkie and left middle finger was not reset and did not heel properly.

## VIII. PRAYER FOR RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Court grant the following relief:

A. Issue a declaratory Judgment stating that:

1. The physical abuse of the Plaintiff by Defendants Ramsdell, Arquitt, Fournier, Mitchell, Willett, Larocque, and Keating on February 3, 2012, violated the Plaintiff's rights to be free from Cruel and Unusual Punishment under the Eighth Amendment to the United States Constitution.

2. The physical abuse of the Plaintiff by Defendants Hebert, Fournier, Ripa, and Lanare on May 12, 2012, violated the Plaintiff's rights to be free from Cruel and Unusual Punishment under the Eighth Amendment to the United States Constitution.

3. Defendants Eddy's, Fournier's, Mitchell's, Willett's, Larocque's, and Keating's action in failing to intercede on behalf of Plaintiff

to stop the physical abuse on February 3, 2012, violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution.

4. Defendants Lamare's, Hebert's, Spinner's, Bickford's, Palmer's, Greene's, Willett's, Travers, and Williamson's action in failing to intercede on behalf of Plaintiff to stop the physical abuse on May 12, 2012, violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution.

5. Defendant Rock's failure to take action to curb the physical abuse of Prisoners including the Plaintiff by Corrections Officers violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution.

6. Defendant Koenigsmann's failure to take action to stop the further medical violation of Plaintiff's medical care and to provide adequate and effective medical care for the Plaintiff violated, and continue to violate, the Plaintiff's rights to medical care under the Eighth Amendment to the United States Constitution.

7. Defendants Rock's, LaValley's, and Johnson's failure to take action to stop the further medical violation of Plaintiff's medical care and to provide adequate and effective medical care for the Plaintiff violated, and continue to violate, the Plaintiff's rights to medical care under the Eighth Amendment to the United States Constitution.

8. Defendants Travers, Williamson's, RN Doe's, Cook's, Baker's, and Fairchild's actions in failing to provide timely, adequate, and effective

medical care for the Plaintiff violated, and continue to violate, the Plaintiff's rights to medical care under the Eighth Amendment to the United States Constitution.

9. Defendants Gordon's, Lee's, Holmes', Patel's, Browman's, and Rehany's actions in failing to provide timely, adequate, effective, and needed medical care for the Plaintiff violated the Plaintiff's rights to medical care under the Eighth Amendment to the United States Constitution.

B. Issue an Injunction ordering Defendant Koenigsmann or his agents to:

1. Immediately arrange for the Plaintiff to have a MRI Examination, CAT scan Examination, or/and a Tomography Examination of Plaintiff's left hand and left arm, face and nose, and head to determine the extent of the Plaintiff's injuries;

2. Immediately arrange for the Plaintiff's need for surgery on his left hand, left pinkie, and left middle finger, follow-up medical treatment to be evaluated by an Orthopedic Hand Surgeon with expertise in the treatment and restoration and function of broken hands;

3. Immediately arrange for the Plaintiff's need for effective pain medication for his migraines and left hand and left arm pain; and

4. Carry out without delay the treatment directed by the Orthopedic Hand Surgeon.

C. Award Compensatory damages in the following amounts:

1. $ 850,000 jointly and severally against Defendants Ramsdell, Arquitt, Fournier, Mitchell, Willett, Larocque, Keating, Eddy, and Rock for physical injuries and pain and emotional injury sustained as a result of the Plaintiff's unnecessary beating on February 3, 2012.

2. $ 8,500,000 jointly and severally against Defendants Fournier, Ripa, Lamare, Hebert, Spinner, Bickford, Palmer, Greene, Willett, Travers, Williamson, and Rock for physical injuries and pain, emotional injury, and mental anguish sustained as a result of the Plaintiff's unnecessary beating on May 12, 2012.

3. $ 4,500,000 jointly and severally against Defendants Lee, Koenigsmann, LaValley, Rock, Patel, Johnson, Travers, Williamson, RN Doe, Cook, Baker, Gordon, Fairchild, Holmes, Browman, and Rehaey for the physical injuries and pain, emotional injury, and mental anguish sustained and resulting from their failure to provide timely, adequate, effective, and needed medical care to the Plaintiff after the unnecessary beating of Plaintiff on May 12, 2012.

D. Award Punitive damages in the following amounts:

1. $ 100,000 each against Defendants Ramsdell, Arquitt, Fournier, Mitchell, Willett, Larocque, Keating, Eddy, and Rock;

2. $ 800,000 each against Defendants Fournier, Ripa, Lamare, Hebert, Spinner, Bickford, Palmer, Greene, Willett, Travers, Williamson, and Rock;

3. $1,000,000 each against Defendants Lee, Koenigsmann, LaValley, Rock, Patel, Johnson, Travers, Williamson, RN Doe, Cook, Baker, Gordon, Fairchild, Holmes, Browman, and Behany.

E. Award Nominal damages in the following amounts:

1. $1,000 each against Defendants Ramsdell, Argett, Fournier, Mitchell, Willett, LaRocque, Keeling, Eddy, and Rock;

2. $1,000 each against Defendants Fournier, Ripe, Lamare, Hebert, Spinner, Bickford, Palmer, Greene, Willett, Travers, Williamson, and Rock;

3. $1,000 each against Defendants Lee, Koenigsmann, LaValley, Rock, Patel, Johnson, Travers, Williamson, RN Doe, Cook, Baker, Gordon, Fairchild, Holmes, Browman, and Behany.

F. Grant the Plaintiff such other relief as it may appear that Plaintiff is entitled to.

I declare under penalty of perjury that the foregoing Facts stated in the Complaint are true to my knowledge and any facts stated on information and belief are true to the best of my knowledge and belief.

Sworn to before me on this 21 day of January, 2015

Julie L Hungerford
Notary Public State of New York
No. 01HU6270180
County of Franklin
My Commission Expires on 10/13/20 16

Julie L Hungerford
NOTARY PUBLIC

Respectfully Submitted,

S. Hyatt

Shane Hyatt, 05-A-4430, Plaintiff
P.O. Box 2001
Malone, New York 12953