**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SHANE HYATT,

                        Plaintiff,

          - v -                                  Civ. No. 9:15-CV-0089
                                                        (DNH/DJS)

DAVID ROCK, *et al.*,

                        Defendants.

**APPEARANCES:**                      **OF COUNSEL:**

SHANE HYATT
05-A-4430
Plaintiff, *Pro Se*
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

HON ERIC T. SCHNEIDERMAN        CHRISTOPHER J. HUMMEL, ESQ.
New York Attorney General             Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

      Before the Court is Plaintiff's Motion to Compel Defendants to respond to certain discovery demands and interrogatories. Dkt. No. 60. Defendants oppose the Motion, Dkt. No. 63, and Plaintiff submitted a Reply thereto, Dkt. No. 66. For the reasons that follow, the Court **grants in part and denies in part** the Plaintiff's Motion to Compel.

### I. SUMMARY OF PLAINTIFF'S CLAIMS

      This lawsuit was commenced by Plaintiff Shane Hyatt on January 26, 2015, with the filing

of a civil rights Complaint. Dkt. No. 1, Compl. On June 15, 2015, Plaintiff filed an Amended Complaint, as of right, which is now the operative pleading. Dkt. No. 24, Am. Compl. After review, the Honorable David N. Hurd, United States District Judge, reduced the one hundred and four page Amended Complaint to five distinct claims:

1. Plaintiff's claim that on February 3, 2012 excessive force was used against him by Defendants Ramsdell, Arquitt, Mitchell-Oddey, Fournier, Willett, and Keating.

2. Plantiff's claim that on February 3, 2012, Defendants Fournier, Mitchell-Oddey, Willett, Larocque, Keating, Eddy, Brickford, and Spinner failed to intervene and protect Plaintiff from a violation of his constitutional rights.

3. Plantiff's claim that on May 12,[1] 2012, excessive force was used against him by Defendants Herbert, Fournier, Ripa and Lamare.

4. Plaintiff's claim that on May 12, 2012, Defendants Lamare, Herbert, Palmer, Green, and Willett failed to intervene and protect Plaintiff, and

5. A supervisory claim against Defendant Rock, then Superintendent of the Upstate Correctional Facility.

Dkt. No. 37, Dec. & Order, dated Aug. 18, 2015. Among the claims that were dismissed was an Eighth Amendment deliberate indifference to medical care claim, a claim for sexual abuse, a claim for alleged violations of New York State Department of Corrections and Community Supervision ("DOCCS") regulations, and state law claims. *Id.*

---

[1] Within Judge Hurd's Memorandum-Decision and Order ("MDO"), he references the date as May 12, 2012, which is the same date reflected in the Amended Complaint. *Compare* Dkt. No. 37 at p. 16 *with* Am. Compl. at ¶¶ 93-159 & 290-303. However, through likely inadvertence, at the conclusion of the MDO, the relevant date was reflected as May 14, 2012. *See* Dkt. No. 37 at p. 16.

## II. DISPUTED DISCOVERY DEMANDS

On October 21, 2015, the undersigned issued a Mandatory Pretrial Discovery and Scheduling Order, which, *inter alia*, set the discovery deadline for April 20, 2016.[2] Dkt. No. 51. Plaintiff's First Request for Production of Documents was dated February 5, 2016. Dkt. No. 60-2. A portion of those demands related specifically to the alleged use of excessive force on February 3, 2012. *Id.* In general terms, the demands requested logbook entries; photographs and videos; copies of policies and procedures; witnesses and inmate lists, including the names of certain cadre workers; complaints, grievances, use of force and unusual incident reports for any misconduct involving the Defendants; records regarding injuries to corrections officers; the Inspector General ("IG") Report for the February 3, 2012 incident; as well as other documents. *Id.*

Defendants responded to the demands by noting that some of what was sought had already been provided as part of the Court-imposed mandatory disclosure, Dkt. No. 51, and further produced information regarding logbooks; photographs; x-rays; videos; and the use of force policy, Directive No. 4944, Dkt. No. 60-5. In responding to the First Request for Production of Documents, Defendants included documents relating to *both* the February 3 and May 12 incidents. *Id.* Defendants' counsel also noted that he was in the process of looking for any IG report.[3] *Id.* With regard to the remaining document demands, those demands were objected to by Defendants on various grounds including relevancy; that disclosure would or could compromise the safety and

---

[2] The Mandatory Pretrial Discovery and Scheduling Order also specifies the mandatory discovery that is to be exchanged amongst the parties; the substance of such discovery is based upon the particular type of action. Dkt. No. 51, Attach. A. The Order also provides for Plaintiff's deposition, provides a direction with respect to copying documents, the availability of consent jurisdiction, and, as noted above, provides scheduling dates for the completion of discovery and also the filing of dispositive motions.

[3] The DOCCS Office of the Inspector General ("IG") is now known as the Office of Special Investigations ("OSI").

security of the facility; would impede privacy interests; and that the production of certain items, and in particular all grievances, complaints, and unusual incident reports involving any named Defendant, was unduly burdensome and not proportional to the needs of the case. *Id.*

Plaintiff's Second Request for the Production of Documents, dated March 3, 2016, was then served upon Defendants' counsel. Dkt. No. 60-7. Those demands, which ostensibly related to the May 12, 2012 incident, were highly duplicative of the original set of discovery demands. *Id.* Indeed, of the one hundred and two specific demands made in the second request, almost half were similar or identical to what had already been responded to. *Compare* Dkt. No. 60-5 *with* 60-7. Based upon that fact, Defendants' counsel sent back the second set of discovery demands and requested that Plaintiff submit a truncated demand that was not duplicative. Dkt. No. 60-8. That request was not complied with by the Plaintiff, Dkt. No 60-9, and thus Plantiff's demands were never formally answered.

Fianlly, Plaintiff served Interrogatories on Defendants Rock, Herbert, Arquitt, Eddy, Ramsdell, and Mitchell-Oddey. Dkt. Nos. 60-10 & 60-12. However, those interrogatory demands, which were dated April 7/8, 2016, were not answered by the Defendants as they were not served sufficiently in advance of the end date of discovery, set for April 20, 2016, so as to provide the necessary response time. Dkt. Nos. 60-11 & 60-13.

### III. LEGAL STANDARD

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. That Rule has been amended, on several occasions, to reflect evolving judgments as to the proper scope of discovery, and to create a balance between the need for evidence and the avoidance of undue burden or expense. The December 2015 amendment to Rule 26 now defines the scope of discovery

to consist of information that is relevant to a "claim or defense" of the parties and that is "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The specific proportionality factors to be assessed when considering the scope of discovery are:

(1) The importance of the issues at stake in the litigation;

(2) The amount in controversy;

(3) The parties relative access to relevant information;

(4) The parties' resources;

(5) The importance of the discovery in resolving the issues; and

(6) Whether the burden or expense of the discovery is outweighed by the benefit.

FED. R. CIV. P. 26(b). Enveloping the interpretation of Rule 26 is the general standard set forth in Rule 1. That Rule, as amended in December of 2015, requires that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1; *see also* FED. R. CIV. P. 1, advisory committee's note to 2015 amendment (noting that "the parties share the responsibility" to employ the rules consistently with the standards of Rule 1, and that "[e]ffective advocacy is consistent with — and indeed depends upon — cooperative and proportional use of procedure").

## IV. DISCUSSION

The Court will review each of the discovery demands in the order which they were served.

### A. Plaintiff's First Set of Discovery Demands

The original fifty-four demands for production of discovery can be broken down into several categories. First, as to Demand Nos. 15, 17, 35, 37, 38, 39, 40, 42, 43, 46, 47, and 53, these

-5-

demands were, in the Court's view, adequately responded to by the Defendants, Dkt. No. 60-5, and therefore the Plaintiff's Motion to Compel a further response is **denied**.

Next, demands for various policies and procedures make up Demand Nos. 5, 6, 7, 9, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 50, and 52. Dkt. No. 60-2. In response, the Defendants have produced a copy of Directive No. 4944, which deals with use of force in a correctional facility, but object to the production of other policies based upon the need to maintain the safety and security of the facility, as well as other grounds. Dkt. No. 60-5. For example, producing policies and procedures regarding the escorting of inmates directly to the prison population itself may well pose a risk to the facility. Having reviewed the totality of the requests, the Court upholds the Defendants' objections with the following limitations: in addition to any applicable use of force policy and any policy regarding the use of chemical spray and decontamination procedures, the Defendants' counsel shall also produce any DOCCS or Upstate Correctional Facility policy regarding documentation of injuries by staff (Demand No. 9) and any policies on reporting inmate misconduct (Demand No. 33). The Motion to Compel any other prison policy or procedure is **denied.**

The Plaintiff requests various documents relating to the two specific incidences of alleged excessive use of force detailed in his Complaint—the February 3, 2012 incident and the May 12, 2012 incident—and specifically demands any use of force form or unusual incident report, any IG or OIS report concerning any investigation of these matters; and any report of the State Police or the Commissioner of Corrections concerning any investigation they may have done (Demands Nos. 4, 44, 45, and 53). Defendants' counsel responded that DOCCS is searching for the IG's report, but has not yet found it. The Court **grants** the Plaintiff's Motion to Compel on this issue in the

following respect: Defendants are directed to produce for review and inspection by the Plaintiff (but not for copying) a copy of any use of force form, any unusual incident report, any staff injury report, and any IG report which relates to the two instances at issues. In addition, Defense counsel shall specifically state whether Defendants or DOCCS presently possesses, or is aware of, any report from any outside agency regarding the two incidents.

Plaintiff has made several requests relating to the production of complaints and/or grievances by other inmates against the Defendants, use of force reports and logs involving the Defendants, as well as numerous other documents allegedly detailing misconduct by the Defendants at the Upstate Correctional Facility (Demand Nos. 1, 2, 3, 11, 12, and 20). As a general proposition, several courts in this District have held that other complaints of misconduct against a particular Defendant, either before or after the event which is the subject of a civil rights lawsuit, can be discoverable so long as the misconduct is similar to the constitutional violation alleged in the complaint or relevant to a defendant's truth or veracity. *Simcoe v. Gray*, 2012 WL 1044505, at \*3 (W.D.N.Y. Mar. 28, 2012); *Linares v. Mahunik*, 2008 WL 2704895, at \*3 (N.D.N.Y. July 7, 2008); *see also Messa v. Woods*, 2008 WL 2433701, at \*3 (N.D.N.Y. June 12, 2008). The various views on such discovery is well summarized in the extensive decision of *Gross v. Lunduski*, 304 F.R.D. 136 (W.D.N.Y. 2014).

Mindful of the above cited cases, however, the Court must also take into account the recently enacted amendments of the Federal Rules of Civil Procedure with regard to its emphasis on the proportional needs of the case. It is evident that discovery of evidence of prior or subsequent misconduct by Defendants must be determined on a case-by-case basis, considering the need and likely relevance of the discovery as well as the practical difficulties in producing the information.

In addition, the courts are mindful not only of the needs of the Plaintiff but also of the particular issues and concerns involving correctional facilities. Ultimately, courts must fashion discovery orders that are not only reasonable, but also promote the efficient, just, and speedy determination of the case.

Considering the proportional needs of this case, the Court agrees that production of all complaints or grievances against any of the named Defendants for a period of over ten years is neither justified nor required. The fact that a grievance itself was made without some understanding of the merits of the matter is not of significant relevance. This is especially so in a prison setting where constitutional use of force may be required on a daily basis. Nor is a list or log of the number of grievances against a particular officer significant, as an officer may hold a position, such as a member of an extraction team, that would likely lead to the potential for a higher number of grievances. The Court also understands, as explained by the prison officials who have submitted Affidavits in connection with the present Motion, that the production of such complaints and grievances is made difficult by the way it is indexed, including the fact that while it may be coded as to a particular type of grievance it is not indexed by individual corrections officer involved. Dkt. No. 63-1, Matt Kelsh Decl., dated June 24, 2016; Dkt. No. 63-2, Donna Wilcox Decl., dated June 8, 2016.[4]

Nevertheless, Plaintiff is entitled to some discovery on this issue. In particular, the Plaintiff's claim against Defendant Rock is based upon a theory of supervisory liability and therefore

---

[4] While considered, this last point is not determinative for the Court. How the facility stores or indexes its information is wholly within the control of the facility itself, and while Courts in this District have been commenting on this self-created hardship for a number of years, it does not appear that DOCCS has done anything to correct it. Based upon this, some courts have now changed their view regarding this issue of undue burden. *See, e.g., Jackson v. Monin*, 2015 WL 5714243, at *5 (W.D.N.Y. Sept. 29, 2015).

evidence of prior known instances of excessive use of force by a named Defendant would certainly be highly relevant. In balancing the various interests, and in determining what is the most productive use of the available discovery resources which will lead to the most relevant information, the Court concludes as follows: Defendants shall produce for an *in camera* review by the Court, the complete personnel file of each of the named Defendants. In making this directive, it is the Court's understanding that any sustained claim of misconduct against a particular Defendant would be contained in his or her personnel file. If such a finding of misconduct or discipline is maintained in a separate file, Defendants shall also produce that separate file for *in camera* inspection. In addition, the Defendants shall produce any IG or OSI Investigative report, founded or unfounded, from January 1, 2005 to January 1, 2014, concerning alleged misconduct of any of the named Defendants,[5] where such misconduct involves an alleged use of excessive force, an alleged improper use of a chemical agent, or an alleged failure to intervene to prevent harm or injury to an inmate by fellow corrections officer. Those IG or OIS reports shall also be produced *in camera*.[6]

All Plaintiff's other requests for unusual incident reports, grievances, use of force logs, monthly reports or other similar documents, except as specifically stated above, are **denied** as not being proportionally relevant to the case.

Plaintiff has made a demand for the names and DIN numbers of numerous inmates who may potentially be witnesses, including cadre workers assigned to building 10; the inmate who moved

---

[5] As noted in *Gross v. Lunduski*, 304 F.R.D. at 154, the IG files have been digitized since 2005, and are searchable by the name of particular corrections officer. This fact eliminates the claim of undue hardship presented in Defendants' papers.

[6] Because these IG reports, to the extent such exist, would contain information regarding other inmates, and indeed, in light of the comprehensive nature of such investigative reports, there are legitimate concerns for the facility regarding disclosure, and thus an *in camera* review is warranted. *Gross v. Lunduski*, 304 F.R.D. at 154. If the matter survives summary judgment, the relevant records can be provided to appointed trial counsel and submitted to the trial judge for a determination as to admissibility. *See Simcoe v. Gray*, 2012 WL 1044505, at *3.

into Plaintiff's cell on or after the February 3, 2012 incident; and the name of an unknown inmate who was waiting by the 10 building (Demand Nos. 10, 13, 14, & 16). The Plaintiff has not identified with any certainty as to what any of these inmates may have seen, or if they have any information at all. If relevant information exists, it will likely be found in the investigative reports and log book entries which have been or, pursuant to this Decision and Order, will be produced. Therefore, the Plaintiff's Motion to Compel responses with regard to Demand Nos. 10, 13, 14, and 16 is **denied** at this time.

With regard to videos from various cameras at the facility, the Defendants' counsel has represented that all known videos from both incidents have been presented to Plaintiff for viewing. Therefore, Plaintiff's Motion to Compel further responses to Demand Nos. 22, 23, 24, and 25 is **denied.** In the event that additional videos or photographs are discovered, Defendants are required to supplement their response to the Plaintiff and to provide those additional videos and/or photographs for viewing.

As part of his discovery demand, Plaintiff has requested information regarding any injuries allegedly sustained by the corrections officers as a result of the two specific interactions with Plaintiff (Demand No. 8). Defense counsel has objected to the production of medical records and related information based upon privacy grounds. Dkt. No. 60-5. Although there is no physician-patient privilege in the federal law, the Defendants do have privacy interests in their medical records. *Manessis v. New York City Dep't of Transp.*, 2002 WL 31115032, at *2 (S.D.N.Y. 2002). On the other hand, Courts have directed to disclosure of medical records in similar excessive force cases. *See Cruz v. Kennedy*, 1998 WL 689946, at *7 (S.D.N.Y. 1998); *see also Diaz v. Burns*, 2015 WL 5167181, at *15 (W.D.N.Y. Sept. 3, 2015) (holding that medical records were relevant

to inmate's claim that he did not strike officer, and to potentially undermine the officer's credibility). Again, considering the proportional needs of the case, at this time the Court directs only that the Defendants produce any reports prepared by a named Defendant pursuant to their job duties relating to any injuries received as a result of the two interactions with the Plaintiff that are the subject of this lawsuit. In addition, as noted above, the Court directs that any policy with regard to the procedure for reporting staff injuries be produced to Plaintiff and further, as noted hereafter, that the Defendants answer Plaintiff's interrogatories regarding whether they were or were not injured in either event. No additional discovery on this issue is authorized or compelled.

Demand No. 54 requests that the Defendants provide the name and address of any witness or expert witness that the Defendants anticipate calling at trial. The Plaintiff's Motion to Compel a response to this specific demand is **granted.**

Finally, with regard to the remaining demands in Plaintiff's first Request for Production of Documents, the Court has carefully considered those demands under the proportional relevance standard, but exercises its discretion to **deny** Plaintiff's Motion to Compel any further response by the Defendants. This includes the request for production of a floppy disk (Demand No. 36); workplace violence logs (Demand No. 41); the urinalysis test forms (Demand No. 48); Plaintiff's complete prison record (Demand No. 49); and all sick call requests (Demand No. 51).

B.  Plaintiff's Second Set of Discovery Demands

Plaintiff's Second Set of Document Demands, Dkt. No. 60-7, though twice its size, essentially duplicates and expounds upon the first set of demands. The Court agrees with the Defendants' counsel that this second demand creates needless and unnecessary work, and that the better practice would be to submit a single demand, or to only to submit supplemental demands

regarding what has not been requested to date. Nevertheless, and in order to move this case forward, the Court will deal with each of the Second Set of Document Demands.

Demand Nos. 1 through 13, 49 through 52, and 64 through 66, relate to grievances, complaints, logs or investigations regarding alleged correction officer misconduct unrelated to the Plaintiff. Those demands are resolved by the Court's requirement of the production for an *in camera* review of the Defendants personnel files, and of the specified IG or OSI reports. Therefore, the Plaintiff's Motion to Compel as to any other item relating to this issue is **denied.**

Demand Nos. 14 through 48 and 53 through 54 deal with the production of DOCCS, or Upstate Correctional Facility, directives regarding a wide range of topics. Those demands are **denied**, with the exception of the following that shall be produced:

1. Policies and procedures regarding use of force and use of chemical agents, including any decontamination procedure.

2. Policies regarding reporting and documenting of inmate injuries.

3. Policies regarding reporting of staff injuries.

Demand Nos. 55 through 57 and 59 through 63 require production of certain reports regarding the May 12, 2012 incident. It is the Court's directive that any use of force report, unusual incident report, and any IG report, if it exists, regarding this incident, be presented to the Plaintiff for his review. With regard to any third party investigation, such as that conducted by the Commission of Corrections or the New York State Police, Defendants need only provide a copy of such report, assuming that it even exists, if in fact they possess it. Defendants shall however specifically respond to this demand by noting what they do or do not have access to.

As to Demand No. 67, any video of the cell extraction on May 12, 2012 shall be provided

*-12-*

to the Plaintiff for viewing, if that has not been done already.

Plaintiff's demands for inmate names, Demand Nos. 68 through 74, are **denied** for the reasons previously set forth. The inmate's identities, to the extent that they are known, would likely be contained in the relevant log books, use of force form, or the IG investigative report, which has been or will be provided by the Defendants.

It is the Court's understanding that the documents that are the subject of Demand Nos. 75 through 76 and 78 through 80 have been or will be provided and therefore Plaintiff's Motion to Compel in this regard is **denied as moot**. With regard to Demand No. 77, the Court will not require production to the Plaintiff of the "floppy disk" or any related memory card from the camera in question, but the Court highlights the requirement that steps be taken by the Defendants to preserve all electronically stored evidence for trial. *See* FED. R. CIV. P. 37(e).

Next, Demand Nos. 82 and 84 through 102 relate to Plaintiff's medical and mental health records. If he has not done so already, Defendants' counsel shall provide Plaintiff with a copy of his relevant medical records from the date of the first incident until the present time, and shall also allow Plaintiff to have access to x-rays and reports that the Defendants presently possess. The Court, however, is not compelling the Defendants to obtain medical reports and x-rays from third-party providers.

Demand No. 81 requests that the Defendants provide the name and address of any witness or expert witness that the Defendants anticipate upon calling at trial. This request is proper and should be responded to by the Defendants' counsel.

### C. Plaintiff's First and Second Request for Inspection of Items

As to the Plaintiff's request to inspect the digital camera floppy disk; "the keys that allegedly

puncture the skin"; blood samples from Defendant Ramsdell and his bloody shirt; the handheld shield; or the aerosol spray canister, (Dkt. Nos. 60-2 and 60-7), the Court will **deny** the call for the production of those items. However the Court will order Defendants' counsel to photograph, if it is possible and has not already been done, the keys, the shield, the spray canister, and the bloody shirt, and allow the Plaintiff to view the photographs.

### D. Plaintiff's Interrogatory Demands

Turning next to the Plaintiff's interrogatory demands to Defendants Rock, Herbert, Arquitt, Eddy, and Ramsdell, Dkt. Nos. 60-10 & 60-12, this Court notes that the Defendants' counsel was correct that the Defendants were not timely served. However, as the Court is going to briefly extend discovery, the Court will discuss the specific interrogatories and will not require that the Plaintiff serve them again. It is noted that while each demand is different, certain specific issues repeat themselves, and can therefore be presently addressed by the Court. First, the Court is conducting an *in camera* review of the Defendants' personnel files and any IG or OSI investigation of their alleged misconduct. In light of that fact, the Court will **not** require the named Defendants to answer interrogatory questions relating to the subject of that *in camera* review.

The Plaintiff's request that the Defendants identify if they have ever been arrested or charged criminally, even as a youth, is in the Court's opinion, overbroad. Accordingly, the Court will **not** compel Defendants answer those questions.

Defendants, other than the Defendant Rock, are directed to answer if they are aware of any federal or state civil rights lawsuit that was filed against them in the five-year period prior to the incident in question, or in the years that follow. Because Defendant Rock was the Superintendent of the facility in question, and therefore is often named as a matter of course in a federal civil rights

actions, the Court will not require that he identify each and every case in which he has been named.

The Plaintiff requests that the Defendants identify any witnesses that they or their counsel may have spoken to, and to summarize what those witnesses may have seen or heard. While the Court has directed the Defendants to identify any witnesses, expert or otherwise, that they intend upon calling at trial, the Court will not require them, through interrogatories, to divulge work product information.

With regard to the remaining interrogatory questions, those questions detailing any contact that the Defendants may have had with the Plaintiff at any time during his incarceration is too broad and would not likely lead to any relevant information. Accordingly the Defendants need not respond to such interrogatory demand. They also will not be required to disclose to the Plaintiff their financial condition, or the assets that they or their families hold. In the event the jury returns a finding of a civil rights violation and indicates that punitive damages are appropriate, the Plaintiff can at that point renew his demand.

Based upon the foregoing general guidance, the Defendants are directed to provide responses to the following interrogatory requests:

    A.    Defendant Rock - Interrogatories 7, 8, 15, 21, and 22.

    B.    Defendant Herbert - Interrogatories 1, 3, 7 (as limited), 10, 14, 17, and 18.

    C.    Defendant Arquitt - Interrogatories 1, 3, 7 (as limited), 10, and 12.

    D.    Defendant Eddy - Interrogatories 1, 3, 7 (as limited), 10, 14, 17, 18, and 19.

    E.    Defendant Ramsdell - Interrogatories 1, 3, 7 (as limited), 10, 14, 18, and 19.

## V. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that the Plaintiff's Motion to Compel (Dkt. No. 60) is **GRANTED in part and DENIED in part** as set forth above; and it is further

**ORDERED**, that the Defendants shall supplement their responses to the various discovery demands of the Plaintiff that have been approved by the Court, and shall supply interrogatory responses to the specific questions authorized by the Court, **within thirty (30) days** of the filing date of this Decision and Order; and it is further

**ORDERED**, that the Defendants' counsel shall provide to the Court for an *in camera* inspection, the personnel files and IG or OSI reports as detailed in this Decision and Order, and said production shall occur **within forty five (45) days** of the date of the filing date of this Decision and Order; and it is further

**ORDERED**, that in light of this above, discovery in this case is extended for **sixty (60) days** for the sole purpose of complying with the requirements of this Decision and Order, and all other discovery is closed; and it is further

**ORDERED**, that the deadline for the filing of dispositive motions in this case is now set for March 6, 2017; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action in accordance with the Local Rules.

Date: November 18, 2016
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge