**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

SHANE HYATT,

                          Plaintiff,

      - v -                                        Civ. No. 9:15-CV-89
                                                          (DNH/DJS)
DAVID A. ROCK, *et al.*,

                         Defendants.
_____

**APPEARANCES:**                                          **OF COUNSEL:**

SHANE HYATT
05-A-4430
Plaintiff, *Pro Se*
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

HON. ERIC T. SCHNEIDERMAN                  CHRISTOPHER J.
Attorney General of the State of New York         HUMMEL, ESQ.
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

      *Pro se* Plaintiff Shane Hyatt brought a civil rights Complaint, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and housed in Upstate Correctional Facility ("Upstate") and Clinton Correctional Facility. Defendants move for summary judgment as to Plaintiff's claims against Defendant Rock. Dkt. No. 76. For the reasons that follow, the Court recommends that Defendants' Motion for Partial Summary Judgment be

**granted**.

## I. BACKGROUND

Plaintiff alleges that excessive force was used against him during a February 3, 2012 use of force incident and a May 12, 2012 use of force incident, and alleges that he was denied adequate medical treatment following the incidents. *See* Dkt. No. 24, Am. Compl., *generally*. Following the District Court's initial review of Plaintiff's Amended Complaint, the following claims remain: Eighth Amendment excessive force claims arising from the February and May, 2012 incidents against a number of Upstate staff; Eighth Amendment failure to intervene/protect claims arising from the February and May, 2012 incidents against a number of Upstate staff; and supervisory liability claims against Defendant Rock related to Plaintiff's excessive force claims. *See* Dkt. No. 37.

Defendant Rock is the former Superintendent of Upstate Correctional Facility. Dkt. No. 76-1, Rock Aff., ¶ 2. Plaintiff filed a number of grievances, which were reviewed under an expedited procedure for grievances alleging harassment by DOCCS employees. *Id.* at ¶ 9. Defendant Rock delegated the investigation of grievances to the "grievance Lieutenant" or another designated supervisor, and a senior supervisor would prepare a summary of the findings and conclusions for Defendant Rock's review. *Id.* at ¶ 11. Defendant Rock did not personally investigate the allegations contained in Plaintiff's grievances or draft the decisions in response to grievances. *Id.* at ¶ 12. In the event that Defendant Rock felt, upon reviewing a senior supervisor's draft decision, that further investigation was needed, Defendant Rock would order additional investigation or forward the matter to the Office of the Inspector General. *Id.* at ¶ 14. Regarding Plaintiff's five grievances, each grievance was investigated by an investigating supervisor, who found that Plaintiff's claims had no

merit; Defendant Rock or Acting Superintendent Uhler then reviewed and signed off on the senior supervisor's draft decision. *Id.* at ¶ 20.

Plaintiff alleges that Defendant Rock failed to properly investigate and respond to his grievances, and was thereby deliberately indifferent to Plaintiff's safety. *See* Am. Compl. Specifically, Plaintiff alleges that "Defendant Rock's failure to act on the numerous letters, Complaints, lawsuits, and grievances filed with and against his offices [sic] by the Plaintiff as well as other Prisoners . . . constituted deliberate indifference to the Plaintiff's as well as other Prisoners' health and safety, and his failure to act contributed to and proximately caused the used [sic] of excessive force and the Plaintiff's injuries. . . ." Am. Compl. at p. 78. Plaintiff contends that Defendant Rock violated his constitutional rights "by failing to take disciplinary action . . . to curb the pattern and history of excessive force." *Id.* at pp. 77-78.

Presently pending before the Court is Defendants' Motion for Partial Summary Judgment whereby they seek dismissal of Defendant Rock on the basis that (1) Plaintiff cannot establish his personal involvement; (2) Plaintiff cannot establish that Defendant Rock violated Plaintiff's Eighth Amendment rights; and (3) Defendant Rock is entitled to qualified immunity. Dkt. No. 76-3, Defs.' Mem. of Law. A response in opposition to that Motion was received on December 11, 2017. Dkt. No. 94. The Court finds that Defendants have established that there is no genuine dispute as to any material fact regarding Defendant Rock's alleged involvement in the events underlying the Amended Complaint. As such, the Court recommends that Defendant Rock's Motion be **granted**.

## II.  LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*,

the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

As discussed below, the Court finds that Plaintiff has failed to establish the personal involvement of Defendant Rock in the alleged constitutional violations or that Defendant Rock was deliberately indifferent to Plaintiff's safety and recommends that this action be **dismissed** as against Defendant Rock on that basis. The Court therefore does not reach Defendants' contentions that Defendant Rock is entitled to qualified immunity.

#### A. Personal Involvement

##### *1. Supervisory Liability, Generally*

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A supervisory official "may not be held liable for damages merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison

superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

The Second Circuit has held that the personal involvement of a supervisory official may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[1]

The only categories under which Defendant Rock's involvement could fall are those in which a supervisor is informed of a violation and fails to remedy the wrong, or where a supervisor creates or allows to occur a policy or custom under which unconstitutional practices occur. *See* Am. Compl.

### 2. Receipt of Grievances

It is settled that the mere receipt of, without personally investigating, a letter from an inmate is insufficient to establish personal involvement. *Johnson v. Wright*, 234 F. Supp. 2d 352, 363-64

---

[1] The Second Circuit has yet to address the impact of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) upon the categories of supervisory liability under *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). *See Grullon v. City of NewHaven*, 720 F.3d 133 (2d Cir. 2013) (noting that the Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement," but declining to resolve the issue). Lower courts have struggled with this issue, specifically whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See*, *e.g.*, *Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see*, *e.g.*, *Bellamy v. Mount Vernon Hosp.*, 2009 WL1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd*, 387 F. App'x 55 (2d Cir. 2010), others disagree and conclude that whether any of the five categories apply in any particular cases depends upon the particular violations alleged and the supervisor's participatory role. *See*, *e.g.*, *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010). Nevertheless, this Court, until instructed to the contrary, continues to apply the entirety of the five factor *Colon* test.

(S.D.N.Y. 2002) (citing cases). "The general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter." *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009); *see also Vega v. Artus*, 610 F. Supp. 2d 195, 199 (N.D.N.Y. 2009). Moreover, as a general principle, "[m]erely denying a prisoner's grievance is insufficient to establish personal involvement." *Hatzfield v. Eagen*, 2010 WL 5579883, *5 (N.D.N.Y. Dec. 10, 2010) (citation omitted); *see Brooks v. Chappius*, 450 F. Supp.2d 220, 226 (W.D.N.Y. 2006) (dismissing claims against a supervisory official whose sole alleged involvement was reviewing the results of investigations and denying the plaintiff's grievances based on the determinations of other staff members); *see also Flores v. Tryon*, 2017 WL 3705124 (W.D.N.Y. Aug. 28, 2017) (collecting cases); *Ramrattan v. Fischer*, 2015 WL 3604242, at *11 (S.D.N.Y. June 9, 2015).

Some courts in this Circuit have held that a supervisor's review and denial of a grievance, in certain circumstances, is sufficient to establish personal involvement. *See Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (collecting cases). However, certain of those courts, including this Court, have held that a supervisor's denial of a grievance will only establish personal involvement where there is an ongoing constitutional violation. *See id.* ("[M]any courts in this Circuit [ ] have held that an alleged constitutional violation complained of in a grievance must be 'ongoing' in order to find personal involvement, such that the 'supervisory official who reviews the grievance can remedy [it] directly.'" (quoting *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009)); *Sanchez v. Graham*, 2016 WL 5854551, at *7 (N.D.N.Y. Sept. 12, 2016). As such, "[i]f the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Harnett v. Barr*, 538

F. Supp. 2d 511, 524 (N.D.N.Y. 2008); *Ford v. Martuscello*, 2017 WL 4181385, at *8 (N.D.N.Y. July 20, 2017), *report and recommendation adopted*, 2017 WL 4155358 (N.D.N.Y. Sept. 18, 2017); *Thompson v. New York*, 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001).

Here, Defendant Rock did not personally investigate the allegations contained in the grievances or draft the decisions in response to grievances. Rock Aff., at ¶ 12. Each of the five grievances that Defendants recount was investigated by an investigating supervisor, who found that each grievance had no merit.[2] *Id.* at ¶ 20. Defendant Rock reviewed the summaries of findings, prepared by a senior supervisor, and signed off on the final decisions. *Id.*

Under these standards, Plaintiff fails to establish Defendant Rock's personal involvement. Plaintiff's grievances do not allege continuing violations; rather, they allege discrete incidents of assault. *See*, *e.g.*, *Johnson v. Fischer*, 2012 WL 5866130, *4 (N.D.N.Y. Oct. 17, 2012), *report and recommendation adopted*, 2012 WL 5866524 (N.D.N.Y. Nov. 19, 2012) (finding allegations of ongoing exposure to contaminants to be continuing in nature); *Baez v. Harris*, 2007 WL 446015 (N.D.N.Y. Feb. 7, 2007) (finding allegations that supervisor's denial of appeal resulted in him being detained in solitary housing to be continuing in nature). Plaintiff's only allegations that could reasonably be read as ongoing are those regarding Upstate's staff's failure to treat his medical needs and his accompanying grievances regarding the same. *See* Am. Compl. Plaintiff's Eighth Amendment deliberate indifference to medical needs claims have already been dismissed on the merits, however. Dkt. No. 37 at pp. 8-10. Because the alleged violations were not ongoing,

---

[2] The Court notes Plaintiff's contention that Defendants do not address each of the relevant grievances. Dkt. No. 94-2, Pl.'s SMF, ¶ 10. Plaintiff does not provide a description of the grievances not addressed by Defendants, or any evidence that these grievances, UST-41594-10, filed in February of 2010, or UST-45725-11, filed in April of 2011, would alter the Court's analysis. Rather, these appear to allege isolated incidents of assault, from one and two years prior to the incidents at issue in this case. Dkt. No. 76-2, Hale Aff., Ex. A, pp. 2-3.

Plaintiff's allegations against Defendant Rock cannot establish personal involvement.

### *3. Policy or Custom*

Finally, Plaintiff has produced no evidence that would support a contention that Defendant Rock created, or allowed to continue, a policy or custom that fostered the violation of constitutional rights. *See James v. Goord*, 2001 WL 34552046, at *2 (W.D.N.Y. Feb. 10, 2001). Plaintiff conclusorily alleges that the investigations of his grievances were insufficient and flawed. Dkt. No. 94, Pl.'s Decl., ¶¶ 12, 17, 21, 23, 27, & 28. Such speculation is insufficient to defeat the Motion. *See Hyman v. Cty. of Albany*, 2016 WL 2865711, at *15 (N.D.N.Y. Mar. 31, 2016) ("Accepting plaintiff's version of the facts, it nevertheless cannot be said that the investigation is so deficient that [the Superintendent's] acceptance of it supports an inference that he created or continued an unconstitutional policy. . . . any such inference would be based on pure speculation."). As such, the Court finds that Plaintiff cannot establish Defendant Rock's personal involvement in the facts alleged in the Amended Complaint.

### **B. Deliberate Indifference to Plaintiff's Safety**

The Court recommends that Plaintiff's claim against Defendant Rock be dismissed because Defendant Rock was not sufficiently personally involved in any of the alleged constitutional violations in order to be held liable for those actions. If the Court were to find, however, that Defendant Rock's denial of Plaintiff's grievances makes him personally involved in the violations, the Court would still find that his denial of the grievances does not constitute deliberate indifference.

A deliberate indifference claim can only succeed if the plaintiff can demonstrate that "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see Thompson v. New York*, 2001 WL 636432, at *7-8 (finding no deliberate indifference by the superintendent where "[a]s plaintiff himself allege[d], the Superintendent authorized an investigation based on plaintiff's filed grievance, and the investigating official concluded, based on documentation before him, that the corrections officers were not guilty of misconduct" and "[p]laintiff allege[d] no basis for inferring that the Superintendent was obliged to reject this conclusion or be deemed to have shown deliberate indifference to known misconduct by the prison staff.").

Here, Plaintiff only submits conclusory allegations that Defendant Rock was aware of excessive force and failed to act on that knowledge. Such conclusory allegations cannot defeat a motion for summary judgment. *See Scott v. Coughlin*, 344 F.3d at 287. Specifically, Plaintiff alleges that Defendant Rock

> fail [sic.] to take disciplinary action or corrective action with respect to allegations of excessive force, or otherwise fail [sic.] to protect the safety of the inmates in his custody from excessive force by staff, that allegations of excessive force by inmate [sic.] were not properly and fully investigated by his staff and reviewed by him or the Acting Superintendent, and that he had actual knowledge about the used [sic.] of excessive force against prisoners at Upstate C.F. by security staff since October 1, 2009, through October 2013, through grievances, lawsuits, complaints, memorandums [sic.] and other documents.

Pl.'s Decl. at ¶ 28.

No evidence has been submitted that would demonstrate that Defendant Rock had the requisite state of mind. Plaintiff's allegations that the investigations were insufficient does not establish that Defendant Rock knew of and disregarded an excessive risk to Plaintiff's safety. *See Farmer v. Brennan*, 511 U.S. at 837. Even if the investigations were flawed as Plaintiff asserts, he provides no evidence that Defendant Rock's acceptance of them demonstrates that he knew of and

disregarded an excessive risk to Plaintiff's safety. *See Thompson v. New York*, 2001 WL 636432, at *7-8 . "[M]ere negligence will not suffice." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). Moreover, the evidence suggests that the documents provided to Defendant Rock indicated that the supervising investigator did conduct thorough investigations, and as such, any contention that Defendant Rock knew of and disregarded an excessive risk to Plaintiff's safety are unsupported. *See*, *e.g.*, Pl.'s Decl. at ¶ 25 (memorandum from investigating Lieutenant recounts that Plaintiff and seven inmate witnesses were interviewed, and documentation submitted by all staff members mentioned in the complaint was reviewed during investigation).

As such, even if the Court were to find that Defendant Rock had sufficient personal involvement to potentially be held liable for any constitutional deprivation, the Court would recommend granting summary judgment as to Defendant Rock on the basis that there is no genuine issue of material fact as to Defendant Rock's deliberate indifference to Plaintiff's rights.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Partial Summary Judgment (Dkt. No. 76) be **GRANTED** and that Defendant Rock be **DISMISSED** as a Defendant in this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file

---

[3] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday,
(continued...)

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   February 16, 2018
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

   [3](...continued)
then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).